E. K. Tynan, Administrator, &c., v. I. A. Paschal, next
FRIEND, &c.

That an unrevoked will, which has been lost or destroyed previous to the
death of the testator, may be probated and established by parol testimony
is beyond dispute, although not in direct terms authorized by the statute.

In such cases, however, it is incumbent on the party seeking to establish the
will, not only to prove its due execution, but also to rebut the presumption
of cancellation which arises from the fact that it cannot be found at the
testator's death.

Before an instrument purporting to be of a testamentary character can be rec-
ognized as a valid will, all the constituent facts prescribed by the statute as
necessary to its due execution, must be shown to have concurred.

After a general verdict upon the issue of *drvisavit vel non,* it is questionable
whether a party who has failed to ask the court below to supply omissions
in the charge, can complain that the instructions given did not indicate to
the jury all of the facts upon which, in arriving at their verdict, they
should have passed.

But where the court undertook, in its charge, to expound to the jury the re-
quisites prescribed by the statute for the due execution of a will, and the
charge omitted some of the requisites so prescribed ; and the omissions,
when considered in connection with the testimony, appear to have had the
effect of misleading the jury into the conclusion that the requisites so
omitted were unnecessary : *Held,* that the omissions, under these circum-
stances, were error for which the judgment establishing the will should
be reversed, although the opposing party did not ask the court below to
supply such omissions in its charge.

*Quære*—Whether the statutory directions regulating the probate of wills
prescribe the only modes of evidence by which, in all cases, the courts
should be guided ?    Cases of spoliation, it seems, constitute at least one
class of exceptions.

When, owing to the nature of the case, direct proof of the execution of a
will cannot be adduced, resort may be had to secondary evidence ; which,

Tynan  v.  Paschal.

however, must be sufficient to establish, with reasonable certainty, all the facts which must concur in the valid execution of a will.

The fact that a will is lost does not dispense with proof that it possessed the requisites which, if it were produced before the court, would be essential to its validity.

Nor is it legitimate, except In cases of spoliation, to infer the due execution of a lost will from proof of facts, which, if the will were before the court, would in no way tend to establish it, and which are consistent with the hypothesis of its invalidity.

The direct testimony prescribed by the statute for proof of the execution of wills, is that of at least one of the attesting witnesses, if living and within the jurisdiction of the court ; and if they are dead or beyond the jurisdiction of the court, then proof by two witnesses of the handwriting of two of the attesting witnesses, and also that of the testator, if he was able to write.

The subscribing witnesses to a lost will being dead, the testimony of one witness to the handwriting of one of the subscribing witnesses is not sufficient to authorize the probate of the will ; nor can the insufficiency of such testimony be supplied by proof of declarations made by the supposed testator, subsequent to the execution of the instrument, to the effect that he had a will in existence of import similar to that offered for probate.

Such declarations, however, were admissible in evidence to rebut the presumption of a cancellation or revocation of the will, arising from its loss or destruction previous to the testator's death.

The conclusion deducible from analogous authorities is that, in order to establish the validity of a lost will, it is necessary to prove its execution with the formalities and solemnities prescribed by the statute ; and this should be done by direct testimony, or by legal deductions from facts directly established.

A letter from a testator to his agent directing him to destroy the testator's will, does not, *ipso facto*, operate a revocation of the will.

Whether the statute of this State will admit of the revocation of a will through the agency of an attorney in fact, and not in the presence of the testator, questioned but not decided.


APPEAL from Bexar.    Tried below before the Hon. Thomas J. Devine.

This cause originated in an application to the County Court by Paschal, the appellee, as next friend of Sarah and James Riddle, minors, for the probate of the last will and testament of John Riddle, deceased, which will was alleged to be lost or destroyed.

The appellant, E. K. Tynan, as administrator of the estate of John Riddle, was cited to show cause why the will should not be

probated. The unknown and non-resident heirs of the deceased were cited by publication. At the September Term, 1859, of the County Court, Anna B. Riddle and others, who represented themselves as the sisters and brothers and heirs of John Riddle, appeared by attorney to show cause against the application.

At the November Term, 1859, the County Court, upon hearing the proofs taken in the cause, decreed them to be insufficient, and rejected the application for the probate of the will. The applicant thereupon appealed to the District Court. At the Spring Term, 1860, the cause was submitted to a jury upon the proofs taken in the County Court, with some additional evidence.

The leading facts disclosed by the proofs taken, were that the supposed testator, John Riddle, died in Bexar county in June, 1858; that he had gone to California in 1849, and, before starting, had informed the witness that he had made his will, by which he had left his property to Sarah and James Riddle, his niece and nephew. That soon after his return from California, in 1856, he also informed this witness (Mrs. Canterbury, the mother of Sarah and James Riddle,) that his object in coming back was to secure his property to his said niece and nephew, and that he regretted the death of Mr. Vanderlip, because he knew all about his will and his business in Texas. That he again informed witness that he had made his will previous to going to California. That at various times before and after his trip to California, witness had heard him say that he intended all of his property to go to James and Sarah Riddle; that he did not wish it to go to his other relatives, as it had been made jointly by himself and his brother, the father of James and Sarah, and he considered they were entitled to it after his death. Witness did not know what had become of the will. That in speaking of his will, the said John Riddle, soon after returning from California, said that D. C. Vanderlip and Thompson Robinson, both of whom were then dead, were the witnesses to it. That he always evinced great hostility towards his other relatives in Pennsylvania, and frequently declared they should have none of his property. Witness further testified that John Riddle had acquired his property by the aid and assistance of his brother Wilson, the father of Sarah and James, who brought

him to Texas and took him into partnership in merchandising. That most of the property of John Riddle's estate properly belonged to that of his brother Wilson, who had settled it on him as trustee. That for these reasons, and because of his attachment to Sarah and James, and also of promises made to his brother Wilson at the death-bed of the latter, John Riddle had always declared his intention of settling his property on his said nephew and niece.

Sam S. Smith testified that he had known John Riddle from the year 1843, or 1844; knew him intimately, and also knew his signature. That he had seen a will made by John Riddle, and had no doubt of the signature thereto being genuine. Witness did not recollect the number of the witnesses to the will, but thought D. C. Vanderlip was one; did not recollect who the other was. The will was drawn up in the usual form, and was signed by John Riddle and two or three attesting witnesses. Was positive that it was in the handwriting of Vanderlip, who was Riddle's attorney-at-law; thinks the witnesses were over fourteen years, and competent. The will was dated some time in the spring of 1849. That Riddle wrote to witness from California that he had made a will previous to going to California, and had left all his property to Sarah and James Riddle, with no special legacies. That witness had received this will from J. L. Trueheart, an agent of John Riddle, together with other books and papers. That in his letter to witness written in California in 1855, John Riddle stated that his late agent, Trueheart, would deliver to him a trunk containing his books and papers, in which trunk witness would find the will; that he understood his brother's widow, the mother of Sarah and James, had married again, contrary to his approbation, and he wished the witness to take the will and destroy it, as he did not wish Mrs. Riddle to have any of his land. That in May, 1856, John Riddle returned from California and stopped with Mrs. Canterbury, (previously Mrs. Riddle,) and her husband. That in some three or four weeks after his return, he called on witness, and in course of conversation witness told him that he had received the letter directing the destruction of the will, but that he, witness, did not think that he had the right to destroy it, and after consultation with counsel, had not destroyed it, but still had it in

19*

possession. That Riddle thereupon expressed in strong language his gratification that witness had not destroyed the will, stating his entire reconciliation to Mrs. Canterbury, and satisfaction with her and her husband, and repeating that witness knew that if he left anything when he died, it was for Sarah and Jimmy, (the applicants,) and no one else. Witness could not say positively whether the will ever passed again into the hands of John Riddle. That on two occasions he delivered to John Riddle such o' his books and papers as he wanted, but on neither of those occasions did he take the will. Did not recollect of John Riddle getting papers from him at any other time, but was not positive. He had made frequent search for the will where he supposed it was to be found, if in his, witness' possession, but could not find it. Neither was he able to find the letter received from Riddle, relating to the destruction of the will. Witness was county clerk of Bexar county; was familiar with wills and such matters; examined John Riddle's will when he received the letter directing him to destroy it; described it with particularity; believed it to have been executed in proper form; thought that he would have detected any defects in its execution, if there were any; the will disposed of all of Riddle's property to Sarah and James, the applicants, without special legacies. That John Riddle was of sound mind in 1849.

There was other concurrent testimony relative to the declarations of John Riddle respecting his will, and of other circumstances tending to corroborate the evidence already detailed; but no witness, except S. S. Smith, deposed to seeing the will itself, or identified any of the signatures to it.

The first instruction given to the jury by the court was as follows: "If you believe from the evidence that John Riddle, before going to California, executed or signed a paper.intended by him to be his last will and testament, bequeathing his property to the minors (Sarah and James Riddle); and that he, John Riddle, was of sound mind at the time of signing the instrument; and that it was attested by two or more competent persons, above the age of fourteen years; and that the instrument was not destroyed by John Riddle, or by his direction; then you will find in favor of I. A. Paschal as the next friend of the minors, Sarah and Jas. Riddle."

Tynan v. Paschal.

The court also instructed the jury that the letter from John Riddle to the witness Smith, directing the destruction of the will, not being carried into effect by Smith, did not operate as a revocation of the will; that Riddle's statements, after his return from California, were not legal evidence of the execution of the will, but were admissible as tending to corroborate the evidence of its execution, and to destroy the presumption of its cancellation; that, if they found in favor of the will, they would state in their verdict the names of the witnesses to it, and whether they were living or dead.

The jury returned a verdict in favor of the will, and to the effect that the witnesses to it were D. C. Vanderlip and Thompson Robinson, both of whom were dead. Thereupon the court entered, and certified to the County Court, its decree establishing and probating the will, and directing the appellant, as administrator, to administer the estate with the will annexed.

A motion for a new trial was overruled, and the administrator appealed.

*I. P. Simpson*, for the appellant.—1st. There is error in the first charge of the court to the jury where they are instructed as to the statutory requisites of a valid will. (O. & W. Dig., art. 2116.) In addition to the requisites described in the charge, the article of the statute just cited requires that the testator shall be twenty-one years old, or upwards, at the time of making his will, and that it shall be attested by two or more *credible* witnesses, who shall sign their names in the presence of the testator. These requirements were entirely ignored by the court, and the jury thereby misled as to the law. The charge, indeed, says that the jury must be satisfied that the witnesses were " competent." But a jury may properly be judges of the credibility of witnesses, but not of their *competency;* for the latter phrase has a technical meaning settled by the law itself. Moreover, statutory provisions, especially with regard to the execution and establishment of wills, must be strictly complied with.

Again, it is difficult to understand upon what principle of law the court decided that John Riddle's letter from California to Sam

Smith, who had custody of Riddle's will, directing him to destroy it, was not an immediate and complete revocation of said will. Said letter was a "declaration in writing," written wholly by Riddle, and signed by him, and therefore a complete revocation by our statute. (O. & W. Dig., art. 2118 and 2116.) A declaration in writing—which is a simple revocation, and contains no bequest or devises, or anything else of a testamentary character—is not ambulatory like a will, and need not wait until the testator's death to take effect, but operates immediately, and as completely as a destruction of the will. Therefore, the learning which fills the books upon the question whether a second will, with a clause revoking a former will, revokes said former will absolutely and forever, or whether said former will is revived by the destruction of the latter; in fine, the numerous and conflicting decisions upon the point whether the revoking clause in the will partakes of the ambulatory nature of the will, do not apply to the case of a simple revocation, having no testamentary, and therefore no ambulatory character. (Withers v. Mott, 2 Conn., 67.)

Neither should the case before us be confounded with the case of an *attempt* to revoke by destruction, which fails. The latter, though evincing an intention to destroy, (as where the will is thrown into the fire but rescued with the knowledge of the testator,) is not a revocation, because no one of the modes pointed out in the statute has been followed. On the contrary, the case before us *is* a revocation, because it is in accordance with one of the modes designated. It is not an unsuccessful attempt to follow one mode, viz: "destruction," but it is an exact compliance with another mode, viz: "declaration in writing;" and in this instance the declaration is very explicit. (Walcot v. Ochterlang, 1 Curtis, 580.) The distinction is obvious.

The fourth and fifth charges of the court are considered inconsistent, and the latter erroneous. The fourth properly excludes from the jury all evidence of the declarations of John Riddle, after his return from California, as "legal proof" of the execution of the will. The next charge says that said evidence is admissible for the purpose of "corroborating the evidence of Smith as to the existence of the document, or as strengthening his evi-

dence as to the attestation of witnesses to the instrument." This is certainly admitting said declarations as proof of the execution of the will in violation of all the rules of evidence. Smith's testimony as to the existence, at some time, of a valid will, needed corroboration, it is true; and it is also true that these reported statements of Riddle were the only source whence that corroboration would be derived (for no other witness was introduced who had ever seen the will); but such testimony was clearly incompetent for that purpose. (4 Cowen, 490, and cases hereinafter cited, on the same point.) It would seem that on the trial of this cause much incompetent testimony calculated to prejudice the minds of the jury was admitted; and not the least irrelevant and impertinent to the issue was that concerning the means by which Riddle obtained his property. If it was for the purpose of showing what the motives of the deceased *ought* to have been, it is certainly opening a very wide door. The evidence is illegitimate, and the argument from it is illogical.

The first question is, whether such a will, in valid form, ever existed. There is no proof of the sanity of the testator at the time he executed the will, for the date of its existence is not proved. There is no evidence that the witnesses to the will signed it in the testator's presence. Nor is there any evidence that the attesting witnesses were "credible." (O. & W. Dig., 454.) Smith remembers that he thought they were credible witnesses, but he does not remember their names, and the jury had no means of knowing whether they were credible or not. Mrs. Canterbury testified that Riddle said that D. C. Vanderlip and Thompson Robinson were the witnesses to his will. But such declarations of Riddle, though they might be proof of his having made a will, are not evidence of the proper execution of that will. (2 Greenleaf's evidence, sec. 691; Jackson v. LeGrange, 19 Johnson, 386, 388; Jackson v. Kniffin, 2 Johnson, 31; Daw v. Brown, 4 Cowen, 483.)

Our statute prescribes a mode of probating wills. (O. & W. Dig., art. 699.) If none of the witnesses to the will are now living, their handwriting and that of the testator must be proven, and by *two* witnesses. Do not analogy and common sense indi-

cate that we should have two witnesses to the proper signing and attestation of this will. Or, if it is contended that one is sufficient, should he not swear to the names of the attesting witnesses, and that their signatures which he saw were genuine.

Beyond doubt the contents of this will must be clearly proven by the evidence of those who saw it, and by no other testimony. (Chisholm's heirs v. Ben et al., 7 B. Monroe, 408.) Smith, the only witness who claims to have seen the will, seems to have derived his knowledge of its contents from Riddle's letter, and not from the will itself.

*I. A. & G. W. Paschal*, for the appellee. There is not a scintilla of proof that the will ever went into Riddle's hands, or that it was destroyed. But it has never been found; and it was established upon secondary evidence entirely sufficient. Upon the evidence of Smith, who could not be mistaken as to the contents and signature and sufficiency of the will; and of others to whom he gave the very names of the witnesses, and to whom he spoke of it as existing provision for his nephew and niece to the exclusion of all his other relations. So there is really but one point in the case, and that is as to the effect of the letter to his agent, ordering the destruction of the will, but which, not having been acted upon, the testator afterwards expressed his gratification, and declared his intention to let it stand as his will.

The objections as to the admissibility of evidence we think amount to nothing, so the charges as to the law are correct and the finding was warranted by the evidence. The whole stress of the case is laid upon the assumption that the letter ordering the destruction of the will having been received by Smith, and the will being in his hands, the order operated *in presenti* and *ipso facto* as a destruction of the will, which the subsequent parol declarations could not revive, notwithstanding the false impression which constituted the motive for destruction had been removed.

Upon principles of common sense the absurdity of the proposition is transparent; upon authority it is not sustained. That the letter would have operated as a destruction, had nothing further occurred, may be admitted, provided the will had been destroyed

Tynan  v.  Paschal.

in the presence of the testator.   But the letter was only a power to destroy; and not having been acted upon, its revocation by parol was certainly in the power of the testator.   It seems to me that our statute was much more controlling in our favor than the court below held; and it might well be urged, that had Smith acted upon the instruction contained in the letter, and destroyed the will, yet, as that was not "in the presence of the testator," it would not operate as a destruction.   (See our statute about wills, sections 3 and 8, Hartley, articles 3254 and 3258.)

This statute certainly overrules all the common and ecclesiastical law authorities, and the authorities from other States.   The authorities are collected in 1 Jarmon, side page 155.   But they all show that the statutes control, and that very nice distinctions depend upon the statutes.   See the cases collected in the copious note, 1 Jarmon, top page 183; 4th Kent, 5th edition, note *c*.   The case of Brown v. Thorndyke, 15th Pickering 389, shows that such a revocation cannot affect real estate.   In the present case nearly the whole property was real.

" In the presence," is of the essence of revocation.

The will not having been revoked, the only remaining question is, was it properly proven?

That it was, the very authorities cited by the other side prove. The original could never be found.   But Smith proved its existence and contents, as, also, that it was legally witnessed and in the handwriting of Vanderlip.   The statements of Riddle, consistent with these statements, were admissible according to the principles of Chism v. Ben, *et al*, 7th Kentucky Reports, 488; 2 Greenleaf Ev., sec. 688.   The cases cited from Johnson's Reports do not apply, because there the wills were produced.   Here the will was lost and the witnesses dead.   There was a necessity of secondary evidence.   The jury found the evidence sufficient under proper instructions.   See the doctrine as to evidence collected in Jarmon on Wills, page 219, *et seq*.

MOORE, J.—This is a suit to probate and establish a lost will, by parol testimony of its execution and contents.   That a will lost or destroyed previous to the testator's death, if not revoked, may

be thus proved, although not in direct terms authorized by the statute, is beyond dispute. In such cases, however, it is incumbent upon those who seek to establish the will, to prove its due execution; and, also, to rebut the presumption of cancellation, which arises from the fact that it can not be found at the testator's death. The constituent facts necessary to the due execution of a will are specifically prescribed in the statute. (O. & W. Dig., art. 2116.) And these must be shown to have concurred, before an instrument purporting to be of a testamentary character can be recognized as a valid will. Their existence, however, might unquestionably be concluded by a general verdict, upon the issue of *devisavit vel non*, and it may be questioned, whether a party who has failed to ask the court to supply any omissions in its charge, can complain that the instructions given to the jury did not indicate to them all of the facts upon which they should have passed, in arriving at the conclusion manifested by their general finding. If the court had in this particular remained entirely silent, and merely left the jury to their own deductions from the law, that may have been read to them, or in their hearing, during the progress of the cause, it could be properly said, as it has often been in similar cases, that the appellant had no reason for complaint, save that of his own negligence. But in the present case we think the jury were fairly authorized to conclude, if the testimony was sufficient to establish the facts enumerated in the first instruction given them by the court, as indicative of the due execution of a will, that they were required to find on this branch of the case in favor of the will.

A comparison of the charge with the statute shows that the able and distinguished judge who presided upon the trial of this cause, in the court below, was less accurate on this occasion than is his usual habit. The statute requires that the witnesses to a will shall be " credible," the instructions of the court say, that the jury must find whether the instrument was attested by " competent " witnesses, without informing them what is necessary to their competency. The discrepancy, however, in this particular is slight, and it may not unreasonably be concluded, that the word used by the court was understood by the jury in a synonymous

sense with that used in the statute. But the charge altogether omits reference to the requirements of the law that the testator must, at the execution of the will, have been over twenty-one years of age, and that the attesting witnesses must have subscribed their names in presence of the testator. The omission of the charge in the last particular becomes more important when considered in connection with the testimony, which was in this respect altogether silent, unless it can be inferred from the statement of the witness, who read the will, that it was in the usual form of wills, and the recognitions of it by the decedent as his will.

And this leads us to consider by what rules we should be governed in passing upon the question of the due execution of a lost will. Where an instrument testamentary in form is shown to have existed, what inferences are to be indulged in its favor? And what facts must be proved to warrant the court in establishing and admitting it to probate, as a valid will? Before considering this question, however, it may be remarked that the subscribing witnesses to the will were both dead, but the handwriting of only one of them was proved, and this by only a single witness.

If the statutory directions regulating the probate of wills (O. & W. Dig., art. 699,) are applicable, and furnish the only rules of evidence by which the courts should be guided in all cases for their probate, it is manifest that there was a failure on the part of the plaintiff to sustain the issue of due execution of the alleged will. The language of the statute is general, and it does not very readily appear why it should not be as applicable to the probate of lost wills, except in cases of spoliation, as well as when the will is before the court. If it is urged that the loss of the instrument renders proof of its due execution, in the manner directed by the statute, more difficult, and therefore some indulgence should be extended to the necessity of the case, lest rights might be lost through the frailty of testimony, it may be answered, if the loss of the will makes proof of its execution in the manner directed by the statute more difficult, a relaxation of the rule would afford greater facility to the perpetration of fraud, and make it more difficult to meet or repel it. The fact that the will is not, in all instances, before the court where it

is being probated, may have been one of the reasons why the stringent rules laid down in the statute are deemed necessary. At the same time it is to be noted, that while the statute declares how a "will may be proved," it does not say that this may not be also done in some other way when, from the nature of the case, through the loss of the instrument, the rules prescribed by the statute are not immediately and directly applicable. I can not say that this view of the question, unless in cases to which the rules prescribed by the statute are clearly inapplicable, meets my approval. Yet, it seems to have been sanctioned by high authority. (See Succession of Clark, 11 La., Ann. R., 124.) And, unquestionably, when the direct proof of the execution of a will can not, owing to the nature of the case, be adduced, resort may be had to secondary evidence. But this must be sufficient to establish, with reasonable certainty, all the facts which must concur for the execution of a valid will. It surely can not be maintained, that facts which must be established in order to give effect to the testamentary instrument, if it were before the court, need not be proved if it is not produced. If so, the case derives presumptive strength from its intrinsic weakness. Nor does it seem legitimate or reasonable (except in cases of spoliation, when the wrongful act of withholding or destroying the means of furnishing direct testimony authorizes presumptions and conclusions which otherwise would not be indulged,) to infer its due execution from proof of facts which, if the will were before the court, would in no way tend to prove it, and which are usually and reasonably consistent with the contrary conclusion.

The direct testimony prescribed by the statute for proof of the execution of wills, is, if the attesting witnesses are living, proof of its due execution by one of them; and if they are dead, or beyond the jurisdiction of the court, proof by two witnesses of the handwriting of the two attesting witnesses, and that of the testator, if he was able to write. The mere declarations and statements made by the testator, subsequent to the completion of the supposed testamentary instrument could not, if the will were before the court, be received as primary evidence of its due execution, in lieu of that directed by the statute. And, although the will is lost, if the

attesting witnesses were within the control of the court, would not their testimony still furnish the evidence on the question, and could its place be supplied by any other? Is it not as reasonable when the witnesses are dead, that the statutory rule of evidence should also be resorted to? If the instrument had been so treated or handled as to be susceptible of proof in this manner, it is apprehended that there would be little doubt that the statutory rule of evidence would be applicable to it. It must be considered, though, that papers of this character are not usually entrusted to those who are disconnected with their execution; and it is, therefore, generally a difficult matter, and often an impossible one, to know who are the subscribing witnesses to a lost will. And if they are known, it would seldom be the case that their handwriting could be proved. But to this it may be answered, that the mere difficulty of making the proof required by the law, to establish a given fact, affords no reason for a departure from the rules of evidence by which courts are governed. That a will can not be established by the certain and clear testimony which the law requires for its proof, might, with much force, be urged as a reason for its rejection, rather than declaring the vague and glimmering light afforded by secondary evidence sufficient proof of its contents and execution. The due proof of the execution of the will is certainly as important when the will is lost, as if it were before the court; and it would seem necessary that the testimony for this purpose should be as clear and direct in the one case as the other.

The statute (O. &. W.., art. 699,) says, that "a written will may be proved by the affidavit, in writing, of one of the subscribing witnesses thereto," but it does not state the facts that must be embodied in the "affidavit in writing;" but the clear inference is, that it must contain such as are necessary to concur for the due execution of the will. But if this direct testimony in support of the execution of the will can not be had, the statute, also, prescribes that it "may be *probated* on proof by two witnesses of the handwriting of the subscribing witnesses, and also of the testator, if he was able to write." When this character of testimony can be resorted to, the statute indicates all‹ that it is necessary to establish by the witnesses. The law from this alone deduces the existence

of all the facts incident to the due execution of the will. But if it is admitted that other secondary testimony than that authorized by the statute may be resorted to, what facts must be proved by it ? Must not all of those which are essential to constitute a will ? Can any of them be regarded as conclusions of law, from other secondary evidence than that indicated by the statute? If not, although they may be deduced or established as inferences of fact, from proof of other facts, from which they may be regarded as legitimate sequences; yet, as the charge of the court directed the finding in favor of the will, without all the facts being ascertained, it was in this respect erroneous.

Nor can it be said, that all the facts necessary for the due execution of a will are properly and clearly deducible from those that were established in this case—at least, not in a manner to authorize the court or jury in recognizing their existence. For if they are to be inferred in favor of a lost will upon secondary evidence, surely it should not be done on testimony of less strength and force than that which the statute requires to raise the like inference when the will is before the court. The statute requires two witnesses to the hand-writing of the subscribing witnesses. Here, there was but one witness to the hand-writing of one subscribing witness; and although the declarations of the supposed testator were properly received to rebut the presumption of a cancellation, or revocation, of the will, which arises from its loss or destruction previous to his death, and they might, also, be regarded by the jury as tending, in some degree, to strengthen the other proof as to the execution of the will; yet, they were not, of themselves, sufficient proof of it, or even to fully supply the deficiencies in the other proof. The declarations of the supposed testator were nothing more than his legal conclusions upon the facts constituting the due execution of a will, and may have been altogether imperfect or erroneous deductions from them; and, ordinarily, it must be admitted, furnish us a very uncertain and erroneous guide in arriving at proper conclusions upon such questions.

The law of New Jersey requires the testator to sign his name in presence of the witnesses. Yet, in the case of Bailey and others v. Stiles and others, (1 Green. Ch. Rep., 220,) on a bill filed

to establish a will, under a charge of *spoliation*, it was held necessary to prove that the testator signed in presence of the witnesses. Proof of all the other facts essential for the execution of the will, together with the circumstance that the testator put his hand upon the seal, and acknowledged that he signed, sealed and published it as his last will and testament, was not sufficient to authorize the inference that it was signed by the testator in the presence of the witness; and the case would have failed, but for the evidence of a person who was present at the execution of the will, though not a subscribing witness, by whom the fact was established.

In Chisholm's Heirs v. Ben, (7 B. Monroe, 408,) it is said: "It is the due execution of the will that the witnesses are to attest, and by their subscription to authenticate. When the instrument produced is complete in form as a will; or, if not produced, it has been seen with the signature of the decedent, then the proof by the subscribing witnesses, that they subscribed upon his acknowledgment, though without seeing the signature, together with proof identifying the instrument subscribed, as the one seen in perfect form; or, in case of a lost will, the proof by the subscribing witnesses, of acknowledgment alone, might be sufficient in the absence of countervailing circumstances, to prove the due execution of the will."

"But although the mere fact of subscription by attesting witnesses, which is made essential by the statute as a means of authentication, might be deemed in itself a sufficient ground, in the absence of repellant circumstances, to authorize the presumption of all that was necessary to constitute a proper attestation, and to justify the subscription as an act of authentication, it is very different whether and how far other facts, such as the condition of the testator, as being childless or otherwise; his desire to accomplish a particular object by his will; his declarations and acts importing a belief that he had a will, facts to which the statute gives no importance, and which have only a general bearing upon the question of testacy, should be entitled to any effect upon the specific question of due execution of the will, for the proof of which

the statute intends to provide by the attestation of subscribing witnesses."

And in Lewis v. Lewis, (6 Serg. & Raw., 488,) it is said: "If a will of land is lost or secreted, parol proof of its contents by one witness would be sufficient, the proof of the execution being made by the requisite number."

These authorities justify the conclusion, that to establish the validity of a lost will, it is necessary to prove its execution with the formalities and solemnities prescribed by the statute; and it should be done by direct testimony, or legally deducible from such facts as are directly established. And while recourse is to be had primarily to the statutory rules governing the probate of wills, yet other testimony may be used to aid or supply the deficiencies of memory of the attesting witnesses; or when direct testimony can not be had, or the facts of the case take it without the statutory rule, resort may bo had, in the first instance, to such as may be accessible and pertinent to the issue to be determined. But the facts to be established can not be inferred from proof of others from which they are not naturally or reasonably inferable; although, if it were not for the requirement of the statute, the act proved might be regarded as of the same legal import or effect. Nor will the declarations and acts of a party, indicating a belief that he has a will, add but little, if any, strength to the other testimony adduced to prove its due execution. The testimony relied on should be sufficient to prove all the facts necessary for the probate of the will, with as much reasonable certainty in cases of lost wills, as in those where the will is before the court.

In this particular, the charge of the court was objectionable, and the testimony was insufficient to sustain the verdict. Before reversing the judgment, however, it is proper that we express the conclusion to which we have come upon another question presented in the record. Appellants insist that the letter of the decedent to his attorney in fact, Smith, directing him to destroy his will, operated *ipso facto* as an immediate revocation of it. It is plausibly and ingeniously urged that this letter was a declaration, in writing, by the testator, written wholly by himself, directing its cancella-

Tynan v. Paschal.

tion. We can not, however, yield our assent to this position. The leading rule to guide in determining the construction to be placed upon all acts as well as instruments, and more especially those of a testamentary character, is the intention of the parties. Did the decedent intend, by this letter to his attorney, an immediate exercise of his right to revoke his will, by an instrument in writing executed in the same manner necessary for publishing a new will? The testimony of the witness does not induce the belief, that this is the fair or reasonable construction of the letter. Such was not the construction placed upon it by the witness, to whom it was directed, or by the writer of it himself. The manifest intention of the writer, and clear import of the letter, was, that the attorney to whom it was directed, should revoke the will by its cancellation, or destruction. And in such cases, it is not denied that the will remains in force, unless the cancellation, or destruction, is carried into effect. It is unnecessary to enquire whether the language of our statute will admit of the revocation of a will in this manner, by an attorney in fact out of of the presence of the testator.

The judgment is reversed and the cause remanded.

Reversed and remanded.