### SCHNABLE v. HENDERSON.

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 16, 1912.)

1. WITNESSES (§ 159*)—COMPETENCY—TRANSACTIONS WITH DECEDENT.

Under Rev. Civ. St. 1911, art. 3690, providing that in actions by and against executors or administrators neither party may testify against the others as to any statement by testator unless called to testify thereto by the opposite party, and the article shall extend to actions by or against the heirs or legal representatives of decedent arising out of any transaction with decedent, one who was a party to probate proceedings only as devisee and not as heir or representative could testify to declarations by testator that he had cut out part of his will.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 664, 666–669, 671–682; Dec. Dig. § 159.*]

2. WILLS (§ 174*)—REVOCATION—OBLITERATION BY TESTATOR.

The cutting of a clause out of a will by testator revoked the will as to such clause under Rev. Civ. St. 1911, art. 7859, permitting a will to be revoked by testator destroying or obliterating the same.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 453; Dec. Dig. § 174.*]

3. WILLS (§ 296*)—REVOCATION—EVIDENCE—TESTATOR'S DECLARATION.

In probate proceedings, evidence that testator during his last illness and while in bed directed witness to get the box containing his will and took a pair of scissors and cut out a clause therein, and burned it and directed that the will be put in his grip, stating that it was his will, and that he subsequently stated to another on witness' request that he cut the clause from the will, was admissible to prove revocation as to such clause.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 674; Dec. Dig. § 296.*]

Appeal from District Court, Tarrant County; W. T. Simmons, Judge.

Application by J. F. Henderson, administrator, to probate a will. From a judgment of probate, Ella Schnable appeals. Affirmed.

Mike E. Smith, Turner & Bradley, and Theodore Mack, all of Ft. Worth, for appellant. Roy & Young, of Ft. Worth, for appellee.

DUNKLIN, J. Mrs. Ella Schnable has appealed from a judgment of the district court rendered without the intervention of a jury, probating the will of Rufus Chambers; the case having been carried to the district court from a judgment of the county court establishing the same will as the last will and testament of the testator. Application to probate the will, which was in the handwriting of the testator, was filed and prosecuted throughout by J. F. Henderson and A. J. Chambers, who were named in the will as executors. The evidence shows that, as originally written, the will contained a clause devising to Mrs. Schnable, who was in no manner related to him, certain real estate, but that during the last illness of the testator and shortly before his death he with a pair of scissors cut out that clause from his will. Mrs. Schnable sought to have the will probated as originally written, but this relief was denied, and the will was probated with the original paragraph in her favor omitted. During the last illness of the testator and before the paragraph in question was cut from the will, testator gave to Mrs. Schnable $500, but appellant testified that when this was done testator assured her that she would also receive the devise provided for her by the will. However, from the testimony of W. B. Fitzhugh, the court would have been supported in finding that prior to the occasion of the gift to appellant, and on the same day, testator expressed the intention to make such a gift and then revoke the devise in appellant's favor.

[1] The principal questions presented upon this appeal relate to the admission of the testimony of Mrs. Ruby Hart, the only child of the testator and the principal beneficiary under the will, and the testimony of Sister Arnell. Mrs. Hart testified that during the last illness of her father and while he was confined to his bed in his office he said to witness, "Get the keys out of my trousers pocket and unlock the desk and hand me a tin box." Witness complied with this request, and as a result of the joint efforts of the two the box was opened. Her father then took from the box the will as originally written, and, after calling for a pair of scissors which witness handed him, he cut out the item or clause which was missing therefrom when the will was admitted to probate, and then burned it. He then folded the will, handed it back to witness, saying, "Put this in my grip; this is my will." Witness did as he requested. On the same day the testator was taken to the hospital, where he later died. The grip containing the will was taken to the hospital with him. Witness further testified that on the day following his arrival at the hospital she, in the presence of two nurses, Sister Bruno and Sister Arnell, had a conversation with her father in which the following occurred: "I took the will out of the grip and said, 'Papa, I want you to tell Sister about this, that you cut it out'; and he said, 'Yes, Sister, I cut that out.' When I asked my father the question, I held it up and showed it to him where he could see;

---

I was right by his bed; he saw the paper; I held it up; he took it out of my hand; he said, 'Yes, Sister, I did; I cut this out.' He then handed the will back to me and told me to put it back in the grip, which I did."

The two nurses, Sister Bruno and Sister Arnell, testified substantially as did Mrs. Hart relative to the conversation and occurrences at the hospital in their presence. Appellant objected to all the testimony of Mrs. Hart noted above on the ground that as Mrs. Hart was an heir of the deceased, a beneficiary named in his will, and in effect a party to the suit, the admission of the testimony would be in violation of the provisions of article 3690, Rev. Statutes 1911, which reads: "In actions by and against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent." The admission of this testimony over the objection noted is assigned as error.

In the case of Simpson v. Brotherton, 62 Tex. 170, it was held that a wife, though not nominally a party to a suit instituted by her husband against the legal representatives of a deceased person, was not a competent witness to testify to transactions between her husband and the deceased because the community interests of herself and husband were involved in the controversy, and hence the wife was essentially a party to the suit. To the same effect was the decision in Newton v. Newton, 77 Tex. 508, 14 S. W. 157. But in the decision last cited it was further held that legatees and devisees are not included in the classes of persons whose testimony is excluded by the statute. We may concede, then, for the sake of argument, that Mrs. Hart was a party to the suit, yet her testimony is not inhibited by the statute since she was a party, not as an heir or legal representative, but as devisee and legatee, and the only party opposed to her in the suit was appellant, who likewise claimed as a devisee and not as an heir or legal representative.

[2] To the testimony of Mrs. Hart and Sister Arnell relative to what was said and done during the conversation between Mrs. Hart and her father at the hospital, appellant urged the further objection that such testimony tended to prove the revocation of a portion of the will, to properly do which the same solemnities would be required as are required by law to execute the will in the first instance, and that the testimony was inadmissible to establish such a revocation. Following articles 7857 and 7858 of Revised Statutes 1911, which prescribe the solemnities with which wills must be executed, is article 7859 which reads: "No will in writing, made in conformity with the preceding articles, nor any clause thereof or devise therein, shall be revoked, except by a subsequent will, codicil or declaration in writing, executed with like formalities, or by the testator destroying, canceling or obliterating the same, or causing it to be done in his presence." If the clause in Mrs. Schnable's favor contained in the original will was cut out as testified by Mrs. Hart, then that provision was revoked in a manner prescribed by the statute last quoted.

[3] That the declarations of the testator made at the hospital, especially under the circumstances stated, were admissible to prove such revocation is settled by our Supreme Court in McElroy v. Phink, 97 Tex. 147, 76 S. W. 753, 77 S. W. 1025. Furthermore the testimony of Mrs. Hart that her father cut out of the will the paragraph in favor of appellant while at his office and before he was taken to the hospital was not controverted by any witness, neither did appellant object to the admission of the testimony of Sister Bruno who fully corroborated Mrs. Hart's testimony relative to the conversation with her father at the hospital in the presence of the two nurses. No testimony was introduced to controvert the three witnesses named in their testimony relative to the conversation at the hospital when testator told the nurses he had cut out the paragraph from the will, and, if the entire testimony of Mrs. Hart relative to the conversation and acts of the testator at his office before he was taken to the hospital and also to the conversation at the hospital be eliminated, we still have the uncontroverted testimony of the two nurses which, of itself, establishes the revocation of the paragraph in appellant's favor contained in the will when it was first written.

Among others, the trial judge found the following facts with reference to the act of testator in cutting the paragraph mentioned above from the will as originally written: "That said change was made by deceased voluntarily, and that same was done without any undue influence on the part of any one, and was done at a time when deceased was in possession of his reason and conscious of his acts and was at said time of sufficient mental capacity to make his will and to leave his property as he saw fit and desired." These findings were sustained by the evidence, and we approve them.

The judgment is affirmed.