Matter of Proving the Last Will and Testament of MARGARET McGILL, Deceased.

(Surrogate's Court, Bronx County, April, 1919.)

Wills — what does not accomplish a revocation of a will — intention of testatrix — when probate decreed.

A letter written by a testatrix and addressed to her attorney directing him to destroy her will which he had in his possession, though executed with all the formalities required at the execution of a will, does not accomplish a revocation of the will.

It was the intention of the testatrix that her will should be revoked by destruction, but not having been destroyed in the manner provided by law it should be admitted to probate.

PROCEEDING upon the probate of a will.

J. J. Karbry O'Kennedy, for proponent.

Wilder, Ewen & Patterson, for contestants.

Hartley G. Pelletier, special guardian for infant contestants.

SCHULZ, S. The decedent left her surviving as her heirs at law and next of kin seventeen cousins, of whom four were infants. The adult cousins have filed objections to the probate of the document now offered

Surrogate's Court, Bronx County, April, 1919.   [Vol. 107.

as her last will and testament, in which they alleged that subsequent to the date of the propounded paper the decedent duly revoked the same by a writing executed with the formalities required for the execution of a will. They also aver that the statutory requirements necessary for the execution of a last will and testament were not complied with when the propounded paper was executed, and that the same was obtained and subscription and publication thereof, if it was, in fact, subscribed and published, were procured by fraud, undue influence, fear and intimidation practiced upon the decedent by one Thomas A. Hart. The special guardian of the infants filed similar objections on their behalf.

A jury trial was seasonably demanded and questions for submission to the jury framed. These questions were eleven in number and of them five dealt with the propounded paper and the others with the instrument alleged to have effected its revocation. The answers of the jury to these questions, most of which were answered under the direction of the court, were such as to entitle the propounded paper to be probated and also to establish the alleged instrument of revocation as one executed with the same formalities with which a will is required to be executed. The question to be determined, therefore, is whether it has in fact revoked the alleged will.

The instrument offered for probate bears date September 23, 1916, and by it the testatrix bequeathed to a friend, her attorney, Dr. O'Kennedy, whom she also appointed executor without bonds, the sum of $1,000, and all the rest, residue and remainder of her estate she gave, devised and bequeathed to one Thomas A. Hart, to whom she also referred as a friend. The instrument which it is claimed revoked the will was executed and bears date July 3, 1918, two days before

her death. It was addressed to her attorney and is as follows: " Dr. O'Kennedy, Dear Friend, Please destroy the will I made in favor of Thomas Hart. Margaret McGill." It entirely fills one side of a small sheet of paper, and upon the other side appear the names Agnes Thomson and Bessie Gilmore.

As Dr. O'Kennedy had the alleged will in his possession, and as this left the residue of the estate to Mr. Hart, it is fair to assume that the document referred to the propounded paper. It is not so clear, however, that the decedent referred to the whole of this alleged will. The document offered for probate is not only in favor of Thomas Hart, but also in favor of Dr. O'Kennedy, and it is not beyond the bounds of possibility that the testatrix may have meant that she wished to destroy the will only so far as the legacy to Hart was concerned. This construction would find support in the testimony of both of the witnesses to the document, who testify to the effect that the decedent said that Dr. O'Kennedy would be glad to receive the note. If she intended by the document to direct the destruction of the whole will, it would be difficult to explain why she believed that Dr. O'Kennedy, who would lose a thousand dollars thereby, would find pleasure in its receipt. I am assuming, however, in considering this document that it referred to the whole will. In other words, I am looking at it from the viewpoint most favorable to the contestant.

At the time when the document last referred to was signed, Dr. O'Kennedy, the attorney of the decedent and who had possession of the will, was confined in the Knapp Memorial Hospital, where he had been under treatment for eye trouble. The instrument was delivered to him at the hospital on July fourth, at which time, however, he did not have the will with him. On the following day at three P. M. he left the

hospital, but the decedent had died on the morning of the same day.   There is no claim that the attorney was in any way to blame for not calling upon the decedent before her death.   The time which elapsed between the receipt of the paper and her death was so short that, owing to the unfortunate circumstances of his illness, he could not well have acted more quickly.

The law throws well defined safeguards about the execution of wills (Decedent Estate Law, § 21; Laws of 1909, chap. 18; Consol. Laws, chap. xiii), and that the same may be efficacious, it is equally careful to provide for the manner of their revocation.   The Decedent Estate Law, *supra*, § 34, provides: "No will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, or altered, otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by another person in his presence, by his direction and consent; and when so done by another person, the direction and consent of the testator; and the fact of such injury or destruction shall be proved by at least two witnesses."   It is therefore apparent that Dr. O'Kennedy, even if he had the will in his physical possession when he received the paper in question, would not have been authorized to legally destroy it unless he did so in the presence of the decedent and by her direction and consent, and even then the direction and consent of the testatrix and the fact of such destruction would require proof by at least two witnesses.   He was therefore justified in not

destroying the document before he came into the presence of the decedent.

As the answers of the jury warrant the conclusion that the alleged revocation was executed as required by law, the question narrows itself down to determining what the intent of the decedent was when she executed the document. The fact that the decedent did not use the word " revoke " is of no importance; it is the intent that governs, and if that is clear from the words that are used, the mere fact that some specific term which is contained in the statute was not employed to express that intent is of no consequence. But while it is no doubt true, as in cases of wills, that when once the intent is clear, words may be transposed, eliminated or supplied to effectuate it (*Phillips* v. *Davies,* 92 N. Y. 199; *Dreyer* v. *Reisman,* 202 id. 476), the court has no right, where there is no ambiguity, to impute an intent to the decedent which is not warranted by the language of the document, and then to warp the language from its clear and indisputable meaning so as to carry out what the court believes should have been the intent of the decedent, or what the equities of the particular matter under consideration at the moment seem to favor.

In the present case the language of the document is perfectly clear and unambiguous. If the decedent intended to revoke the will by executing the instrument in question, why was the document directed to Dr. O'Kennedy, and why did she ask him to destroy it? The physical destruction of the instrument would add nothing to the effect of the revocation. If the instrument revoked the will nothing that was done to the document could in any way have the slightest effect upon its further validity. As a testamentary distribution recognizable in law it would have ceased to exist the moment the instrument of revocation was executed.

8

Let us assume that this document had been destroyed by the testatrix after she executed it and before its delivery to Dr. O'Kennedy. Would any one argue that the will was of no further validity? Yet, if the instrument effectuated the revocation of the will, its subsequent destruction would not reinstate the will.

It may perhaps be asked what was the necessity of witnessing this instrument if it was only a letter and not a document declaring a revocation as provided by statute. The decedent evidently thought that Dr. O'Kennedy had a right to destroy the will even after her death, and it might well be that she had the two persons sign in order to satisfy Dr. O'Kennedy that her signature to the paper was genuine. If there had been something in the nature of an attestation clause attached, there might be some force in the contention that the signing of the two witnesses was an indication that the decedent intended by the document itself to revoke the will. But without such a clause I do not think that the fact that it bears the signature of two witnesses is inconsistent with the holding that the paper was a written direction to destroy and not an instrument declaring a revocation of the will.

In my opinion the conclusion which follows from the language of the document itself is strengthened when the evidence is examined, particularly that setting forth declarations of the decedent made at or about the time when the instrument was executed. One of the witnesses to the document testified that on July 3, at ten or eleven in the morning, the decedent asked her if Dr. O'Kennedy had come out of the hospital, and upon being told that the witness did not know, said that if he came to send him up right away, because if he did not come she wanted to send him a note telling him to destroy the will leaving everything to Mr. Hart; that at half-past one on the same day

she asked the witness the same question and told her that she thought she would send a note to him, as he must not have gotten out of the hospital as expected; that later in the day she said she was going to send Dr. O'Kennedy a note to destroy the will; that she then instructed Mrs. Thomson, the other witness, to write a note to her friend, Dr. O'Kennedy, to destroy the will leaving everything to Thomas Hart; that after the paper was signed she handed it to Mrs. Thomson and said, " You see that Dr. O'Kennedy gets this; I know he will be glad to get it; " and that on July fourth she said to witness: " I hope Dr. O'Kennedy got that note." The other witness to the document testified that the decedent told her to send that message to Dr. O'Kennedy and that she then wrote the paper in question and was told by the decedent to give it to Dr. O'Kennedy, and that the decedent expressed great satisfaction that the thing was done and stated that she hoped Dr. O'Kennedy would get it, and knew he would be glad; that he had promised to destroy that will just as soon as she asked.

Counsel for the contestant have discussed the matter with great thoroughness, and have cited as supporting their contention *Walcott* v. *Ochterlony,* 1 Curt. Eccl., 580; *Matter of Goods of Durance,* L. R., 2 P. & D., 406; *Matter of Eyre,* 2 Ir. R., 1905, 540. In the first of these cases it was held that a direction to a person to destroy the will of the testator amounts to a present intention absolutely to revoke. In *Goods of Durance, supra,* it was held that a letter directing a person to go and get another's will and burn it is a writing declaring an intention to revoke the will. In *Matter of Eyre, supra,* a direction to destroy a will was decreed to be a writing declaring an intention to revoke said will.

A comparison of the English statute under which

these cases were decided (1 Vict., 26, § 20) with the
New York statute, however, discloses a difference
between them.  The English act provides that a will
may be revoked by an instrument " declaring *an inten-
tion* to revoke," whereas the New York statute pro-
vides that the instrument must be one " declaring such
revocation."

Under these circumstances I do not consider the
cases cited as authorities for holding that the instru-
ment in question revokes this will.

The effort to find an American case on the subject
has resulted in disclosing but one which seems to be
exactly in point.  *Tynan* v. *Paschal,* 27 Tex. 286,
referred to on the same point in *Johnson* v. *Brown,*
51 id. 79.  There the decedent had written a letter to
a witness who was called on the trial, stating that the
decedent's agent would deliver a trunk to the witness
containing his books and papers, in which the witness
would find a will; that he understood that his brother's
widow had married again, and he wished the witness
to take the will and destroy it, as he did not wish her
to have any of his land.  The court, in speaking of this
letter and its effect and after having *Walcott* v. *Och-
terlony, supra,* brought to its attention, wrote as fol-
lows: "Appellants insist that the letter of the deced-
ent to his attorney in fact, Smith, directing him to
destroy his will, operated *ipso facto* as an immediate
revocation of it.  It is plausibly and ingeniously urged
that this letter was a declaration in writing by the
testator, written wholly by himself, directing its can-
cellation.  We cannot, however, yield our assent to
this position.  The leading rule to guide in determin-
ing the construction to be placed upon all acts as well
as instruments, and more especially those of a testa-
mentary character, is the intention of the parties.  Did
the decedent intend by this letter to his attorney an

immediate exercise of his right to revoke his will by an instrument in writing executed in the same manner necessary for publishing a new will? The testimony of the witness does not induce the belief that this is the fair or reasonable construction of the letter. Such was not the construction placed upon it by the witness, to whom it was directed, or by the writer of it himself. The manifest intention of the writer and clear import of the letter were that the attorney to whom it was directed should revoke the will by its cancellation or destruction. And in such cases it is not denied that the will remains in force unless the cancellation or destruction is carried into effect.''

I conclude that the decedent did not intend to revoke the will by the writing in question, but that her intention was that it was to be revoked by destruction, and that such destruction was to be effected by Dr. O'Kennedy, who had it in his possession. The latter being my conviction, I am most favorably inclined toward the contention of the contestant. But as the document was not destroyed in the manner provided by law and as '' The statute positively requires things to be done, and not merely said or intended to be done '' (*Hise* v. *Fincher*, 32 N. C. [10 Ired.] 139, 51 Am. Dec. 383), and the document itself did not accomplish such revocation, I am constrained to dismiss the objections and allow the propounded instrument to proceed to probate, with costs in favor of the proponent and special guardian, payable out of the estate.

Decreed accordingly.