**SIEN et al. v. BEITEL.　(No. 7646.)**

(Court of Civil Appeals of Texas. San Antonio. Dec. 15, 1926. Rehearing Denied Jan. 19, 1927.)

**1. Wills ⟨⤳296—Evidence that testator requested nurse to destroy will, which she falsely represented that she did, held inadmissible.**

In will contest, evidence that testator requested his nurse to destroy will after attempting to do so himself by tearing the envelope containing it, and that she falsely represented to him that she had done so, *held* properly excluded.

**2. Wills ⟨⤳167—Will can be revoked only by due execution of another or destruction by testator or another at his instance in his presence (Rev. St. 1925, art. 8285).**

Will executed according to law can be revoked only by subsequent will executed with like formalities, or by testator destroying, canceling or obliterating it, or causing it to be done in his presence, as prescribed by Rev. St. 1925, art. 8285, which is mandatory.

**3. Wills ⟨⤳302(1)—Production of will and proof of execution entitled it to probate, in absence of legal evidence of revocation.**

Production of will in court and proof of its execution *held* sufficient to entitle it to be probated, in absence of legal evidence of its revocation.

**4. Wills ⟨⤳133—No witness need sign "holographic will," whereas witnesses must sign other wills in testator's and each other's presence.**

Holographic will differs from other wills only in that no witness need sign it, whereas in other wills witnesses must sign their names in the presence of testator and each other.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Holographic Will.]

**5. Wills ⟨⤳174—Whole will held not destroyed because not reattested by striking specific bequest in one paragraph.**

Striking specific bequest of $500 in one paragraph of will *held* not to have made such a different disposition as to destroy the whole will because not reattested as required in cases of original wills.

**6. Wills ⟨⤳297(4)—Testimony as to testator's declaration that he had made later will remembering witness' mother held incompetent.**

In will contest, testimony as to testator's declaration that he had made a later will, in which he remembered witness' mother, *held* incompetent, in absence of evidence of existence of any such will or terms thereof; being mere statement of conclusion without statement of facts on which based.

**7. Wills ⟨⤳306—Later will than that contested held not shown.**

In will contest, evidence *held* insufficient to show existence of a later will.

Appeal from District Court, Kerr County; R. H. Burney, Judge.

Application by Jesse John Beitel, Sr., to probate the will of Charles F. Beitel, deceased, contested by Louise E. Sien and others. From a judgment probating the will, contestants appeal. Affirmed.

H. C. Geddie, of Kerrville, and Douglas & Carter, of San Antonio, for appellants.

W. G. Garrett, of Kerrville, and Terrell, Davis, Huff & McMillan, of San Antonio, for appellee.

COBBS, J. This suit grows out of a contest of the alleged last will and testament of Charles F. Beitel, which was duly probated in the county court of Kerr county and appeal perfected to the district court of said county. The application for probate was filed by appellee, and the will was contested by appellants on four grounds:

First: That it had been revoked by the testator through instructions given to a nurse to destroy the will, which she advised him she had done, but in fact did not do, but caused its preservation.

Second: That it was revoked by the execution of a subsequent will leaving the bulk of his estate to contestants and their sister, Annie Beitel, which will was attested by A. L. Starkey and another, not named.

Third: That it was revoked by the action of the testator in striking from the will the bequest: "To Allie Beitel, $500.00."

Fourth: Because the testator had been unduly influenced to make said will by Albert Beitel, Sr., Jesse John Beitel, Sr., and Laura Beitel Penalosa. Because no evidence was offered to show any undue influence, that ground was abandoned and is no longer in the case.

[1] On the first ground, that the will was destroyed, appellants undertook to show that testator requested Mrs. Cooper, who was nursing him at the time, to read his will over to him. This will bears date of August 28, 1920, and was witnessed by Minnie L. Hudspeth and Frederick F. Nyc. After she read it over to him he took the will and violently tore the envelope around it, attempted to destroy it, but failed to do so himself and requested Mrs. Cooper to do it. She pretended to destroy it, but did not. However, she represented to him that she had destroyed the will and he believed her. The contention of appellants is that, it being the clear intention of the testator to destroy and revoke the will because it did not express his desire and wishes, the document, even though retained, was void; that his intention and desires were defeated by the act of Mrs. Cooper, which was in law a fraud upon him, that operated as a complete revocation and destruction of the entire will. This occurred about six months prior to testator's death,

and he was never advised that the will had not been destroyed as he instructed Mrs. Cooper to do. The court refused to allow appellants to make this proof, and this was assigned as error. The testimony of Mrs. Cooper, offered by appellants, is set out in the bill of exception, as follows:

"Q. Why did he say that he had struck it out? A. He said he didn't want it in there. I said, 'Why did you strike Mr. Alley's name out?' He said, 'I don't want it in there.' I said, 'Why don't you strike the whole thing out then?' and I said, 'Haven't you kind of ruined it?' He said, 'Well, it is no good any way, I want it destroyed'; and he just took up the envelope and tore it all to pieces. I said, 'Don't do that.' He had taken it out of the envelope when he asked me to read it to him.

"Q. When did he say that he struck this out? A. He didn't give me the exact date. I said, 'When did you do that?' He said, 'I did it two or three months after it was made.' He wasn't sure. That was the conversation."

This court has several times passed upon the subject in respect to the requirement of our statute with reference to the revocation of wills. That question was fully presented and discussed in Clover v. Clover (Tex. Civ. App.) 224 S. W. 916, affirmed by the Supreme Court, and more especially and elaborately discussed in Re Brackenridge's Estate (Tex. Civ. App.) 245 S. W. 786. Our statute, article 7859, provides that no clause of a will or devise shall be revoked "except by a subsequent will, * * * executed with like formalities, or by the testator destroying, canceling or obliterating the same, or causing it to be done in his presence." There was no proof admitted touching the reason for such erasure.

The court did not err in that ruling. If it had been admitted, it would have been harmless; besides it would have shown that it was done by the testator himself and, of course, "in his presence." It was not shown to be done by another person. No doubt the testimony would have shown a desire to destroy the whole will, but it was not done in his presence or anywhere else, but remained in existence and presented properly to be probated, and that is what the statute required, or, if not so done, it still remained undestroyed and as his very last will and testament, because it "was made in conformity" with the requirements of the law, and never revoked by a subsequent will, codicil, or declaration in writing executed with like formalities, or by the testator destroying, canceling the same, or causing it to be done in his presence.

[2] Here its destruction is sought to be shown; that he caused it to be done (by Mrs. Cooper) in his presence. She did not do as requested nor as she promised. Under this statute, which is wise and means something, in such a case the destruction must occur in his very presence. She by her act de-feated his purpose and left undestroyed and still in existence his last will and testament— the will it is claimed he desired destroyed. The law in reference to the destruction of wills cannot be so affected and defeated. A will once executed in accordance with law cannot be revoked, except it follows the rules prescribed by the express terms of the law. Clover v. Clover, supra; In re Brackenridge's Estate, supra. The statute is mandatory, clear, and explicit, and a will, once executed according to law cannot be revoked, except in one of the ways prescribed by the statute. Morgan v. Davenport, 60 Tex. 230; Kennedy v. Upshaw, 64 Tex. 411; Hawes v. Nicholas, 72 Tex. 481, 10 S. W. 558, 2 L. R. A. 863; Evans v. Evans (Tex. Civ. App.) 186 S. W. 815.

In the Brackenridge Case, reported in 114 Tex. 433, 267 S. W. 247, 270 S. W. 1001, the Supreme Court, speaking in the matter, said:

"Articles 7857 and 7858 provide the requisites and methods by which a valid will may be executed. The modes of revoking a will are as definitely prescribed in article 7859 as the modes of making it, and no essential part of the one can be dispensed with any more than the other." Locust v. Randle, 46 Tex. Civ. App. 544, 102 S. W. 946; Tynan v. Paschal, 27 Tex. 286, 84 Am. Dec. 619; Graham v. Burch, 47 Minn. 171, 49 N. W. 697, 28 Am. St. Rep. 339; Trice v. Shipton, 113 Ky. 102, 67 S. W. 377, 101 Am. St. Rep. 351; Ruling Case Law, vol. 28, § 143, pp. 184, 185.

[3] The will was produced in court and its execution proven, and no legal evidence tendered or introduced by appellants to show that it was revoked. Appellee, on the contrary, has shown all that was necessary to entitle the will under the law to be probated. McElroy v. Phink, 97 Tex. 155, 76 S. W. 753, 77 S. W. 1025.

[4] In the case of Schnable v. Henderson (Tex. Civ. App.) 152 S. W. 231, the testator, instead of erasing the item by pen or pencil, cut the entire clause out. Instead of eliminating by erasure it was cut entirely out; "thus that provision was revoked in a manner prescribed by the statute" in question, so said the court. And it made no difference whether it was a holographic will or not. The only difference between a holographic will in this respect and the one under discussion is in reference to the manner required to establish it for probation. That is, when written wholly in the handwriting of the testator, no witness is required to sign the same to give it vitality as a will; whereas in the others witnesses are required to sign their names in the presence of the testator and each other.

[5] For the reasons already given we overrule appellants' second proposition, contending that by striking out the paragraph of the will, "To Allie Beitel $500.00," it made such a different disposition as to destroy the whole will, because not reattested as required in cases of original wills. This did not have

that effect, and the will as to the balance was not thereby affected. Schnable v. Henderson, supra.

The third, sixth, and seventh propositions are so related as that they require no separate discussion. It was shown that one of the attesting witnesses was the assistant cashier of the Schreiner Bank, and the business adviser of the testator, where the testator did his business, kept his bank account and securities. The testator sought his assistance and requested him to have his will prepared, giving him the necessary data (doubtless prepared for him by Judge Wallace). It was written out from such data by Miss Hudspeth, the stenographer of the bank, and when finished was read over by the testator and executed in the presence of Mr. Nyc and the stenographer, Miss Hudspeth, who wrote the will, and proven by them as attesting witnesses when it was probated.

[6] There was no error in the ruling of the court in refusing, as contended for in the third proposition, to permit Miss Annie Sien to testify in 1923 and 1925 she had certain conversations with the deceased, in which he stated he "had made a later will and had remembered my mother in the will." Such testimony was wholly incompetent for any purpose here. No satisfactory evidence had been offered to show the existence of any such will or the terms thereof, and no such general statement of declarations of a deceased person can be shown for the purpose of proving that the necessary requirements of so solemn an instrument as a will not accounted for, which the law so carefully required to be done under its formalities in its execution and then to be revoked only in the manner prescribed by the same law. Article 8285, R. S. 1925. It is not permissible to accomplish that purpose by the testimony of witnesses as to the naked declarations of the testator, unsupported, that he has made another will or revoked a particular will. Such statements would merely be statements of conclusions, without a statement of facts upon which such conclusions are based. McElroy v. Phink, supra; Tynan v. Paschal, supra. The proper predicate was not laid for the introduction of such testimony.

[7] The court correctly ruled that the testimony of all the witnesses failed to show the existence of another will. The testimony of A. L. Starkey was wholly lacking, as was that of Judge Wallace, to create the suspicion of another will, and the court did not err in excluding their testimony. There was no proof of the execution of any will in accordance with the legal formalities. A. L. Starkey testified that Judge Wallace called him and asked him to sign Mr. Beitel's will. He did not remember the name of any other person who signed it. He said:

"I cannot tell a thing about the terms or provisions of the will; I cannot tell anything it contained; I did not read it at all then; I cannot tell anything about the contents; I did not read it at all then. As to whether it was a codicil instead of a will, I could not tell you that; I don't know; I don't remember. As to whether it was a contract or not, I don't know; I was just requested to sign a will; Judge Wallace said, 'A will.' My conversation with regard to the matter was with Judge Wallace; that is all that I recollect. I can't recollect that Mr. Beitel ever asked me to sign it; I can't swear positively to that."

E. H. Turner testified:

"I voluntarily told him if he desired I would sign his will as a witness. As to whether I signed the will as a witness, I don't remember positively, but I am inclined to think that I did not. I do not remember when it was signed up. I have no knowledge; I don't remember anything pertaining to that further. I merely heard Mr. Beitel give his directions to Judge Wallace as to the will. I was only there a short time in the office. I cannot fix the date when that was; to the best of my knowledge, I guess it was between four and five years ago; but it may have been longer, and it might not have been so long, and I have nothing which I could refer to to fix the date. I don't remember the year in which this occurred."

Judge Wallace testified:

"I do not remember when this occurred. I do not remember Mr. Beitel signing it. I do not remember how he was dressed. As to whether he had a cloth on his head at that time, I think that he got to wearing that later on; it was while he was still active about the streets here. I never did see that will afterwards, he took away with him what I had prepared. I do not remember whether it was typewritten or written out in longhand. I do not operate a typewriter. I may have had a machine in the office at that time, but it wasn't being operated. If I prepared anything, it was written out in longhand, and if it was finally executed it was typed by somebody; that is my custom. As to whether it is a fact that I might have used notes, and that Mr. Beitel took it across to Mr. Nyc that day and had it typed over there and signed it over there, I don't know. I don't know whether that happened or not. In these notes which I was preparing for him he made a bequest to Allie Beitel's two little girls, but the other beneficiaries I don't know. I could tell you why I didn't forget them; it was because they were friends of mine. One of them was Geraldine, and the other one was Gertrude. I testified that I did not know whether it was $500 or $1,000 which he bequeathed to each of these two girls, but it seems to me it was $500 apiece. This will here corresponds with that. If the will was prepared by me and finally executed it was typed by somebody, but I don't know who typed it. I don't do any typing myself."

It is patent that the testimony of these witnesses refers to the will probated, which was finally written out under the direction of and by Mr. Nyc's stenographer, and the court did not err as complained of in not considering this unsupported testimony, and, if

error, it was entirely harmless. An examination of appellants' contentions, assignments, and propositions convinces us that no error of law had been assigned that should require a reversal.

The judgment is affirmed.