**McCLUSKY et al. v. OWENS.**

No. 14539.

Court of Civil Appeals of Texas. Dallas.

Jan. 9, 1953.

Rehearing Denied Feb. 13, 1953.

McKool & Bader, Dallas, for appellants.

Eades & Eades and Imogene Munoz, all of Dallas, for appellee.

BOND, Chief Justice.

This is a suit brought by Rose McClusky, joined pro forma by her husband W. O. McClusky, in the Probate Court of Dallas County, Texas, against Delmar Owens, administrator of the estate of W. J. Owens, deceased and all heirs at law of the said W. J. Owens, to set aside the probation of a will dated April 4, 1945 and a codicil thereto dated April 15, 1948, duly executed by the said W. J. Owens; and to probate a propounded lost holographic will dated January 15, 1949.

The aforesaid will of April 4, 1945 and codicil of April 15, 1948 were admitted to probate September 20, 1949, and Delmar Owens appointed administrator of the testator's estate with the will annexed. The probated will and codicil are as follows:

### The Will

"Dallas, Texas. April 4, 1945. I, W. J. Owens, Devise and Bequeath to my Brothers M. B. and R. B. Owens of Albany Clinton Co. Ky. all of my Real and Personal Property, after all of my just and legal Debts are paid, and my Grave are marked not to cost to exceed $300.00 Three Hundred Dollars. M. B. and R. B. Owens to act as Administrator jointly and separately, or appoint a Substitute or to act in their place and stead if they so choose. Whosoever is Administrator of my Estate is to serve without Bond. This my first and only Will. Signed, April 4, 1945. W. J. Owens. Witnesses: Hugh Herod A. W. Minyard.

Signed in the presence of W. J. Owens and in the presence of each other."

## The Codicil

"April 15, 1948. W. J. Owens Brothers & Sisters. Shall Shair Equally to my Estate at my Death. Brothers Martin B. Owens " Reubin B. Owens, " Claude E. Owens, Dead. 2–H.L Sisters Mollie Wray, Dead, 4–H L " Victory Stewart, Dead 2 H.L. "Minnie E. Smith, Dead 1–H.L " Elizibeth J. Williams, Dead, 2–H–L All of my Real and Personal Property. W. J. Owens All of Albany Clinton Co. Ky."

The propounded subsequent lost holographic will of the said W. J. Owens is alleged to have been executed on or about January 15, 1949 and because of its having been fraudulently taken from the possession of the said W. J. Owens at a time when he was seriously ill by Delmar Owens, it was secreted or destroyed to prevent the said Rose McClusky from securing her beneficiary share in the testator's estate as per the holographic will.

On evidence submitted to the Probate Court to establish the lost holographic will of W. J. Owens, deceased,—its execution and the reasons why said will cannot be produced in court, the Probate Court refused to set aside the probation of the will and codicil in evidence, admittedly executed by the said W. J. Owens; denied probate of the alleged lost holographic will, resulting in appeal duly made to the District Court of Dallas County; and on trial de novo to a jury, on motion of the respondent, Delmar Owens, Administrator, the District Court peremptorily instructed a verdict against the relators, proponents of the holographic will, and entered judgment in favor of the respondents affirming the action of the probate court; refusing to set aside the probation of the will and codicil and denying probation of the alleged lost holographic will. The petitioners, Rose McClusky and husband W. O. McClusky, duly appealed, assigning errors to the action of the trial court to the effect that the evidence under the substantial evidence rule was of such probative force of the existence of facts sought to be established, in that the holographic will was executed by W. J. Owens;

that the holographic will had never been revoked by the testator, and that it had been fraudulently taken from the possession of the testator; hence the court erred in sustaining respondent's motion, peremptorily instructing the jury against the probative issues of fact to probate the holographic will; and, further, to the action of the court in not allowing Rose McClusky to testify in detail regarding opening of a trunk belonging to the deceased in the presence of Delmar Owens some ten days before the death of the said W. J. Owens while he was in the hospital and as more fully hereinafter related.

The purported holographic will and its loss are related by witnesses as follows:

Mr. Leonard Samuel Hatter testified that he had been a nurse for more than thirty years; that he met the deceased in December 1948 at the East Dallas Hospital and went with the deceased to his home in January 1949 as his nurse, and took care of him through a spell of illness; that Mrs. Rose McClusky often visited Mr. Owens and called on him practically every day, and on days she did not call, Mr. Owens would call her, she cooked for and brought Mr. Owens his meals, sometimes his clothing; and that none of the other relatives of Mr. Owens ever came to see him, except his first cousin, Delmar Owens, who was also a first cousin to Mrs. Rose McClusky. Mr. Owens was especially fond of Mrs. Rose McClusky and expressed appreciation for what she had done for him. He further testified that on January 15, 1949 he saw Mr. W. J. Owens write a will. It was written wholly by him in his own handwriting; he wrote the will in bed, dated January 15, 1949, and in it Mr. Owens stated: "I hereby will Mrs. Rose McClusky my home and the furnishings that are in it, and the rest of my estate shall be divided share and share alike between Mrs. Rose McClusky and my brothers, Reubin and Martin Owens." He also stated in the will that Mrs. Rose McClusky was to be administrator. It was written and signed by W. J. Owens, or Will Owens, in the presence of the witness, and after Mr. Owens wrote the will, he (Mr. Hatter) read the will,—because Mr. Owens handed it to him

and asked him to read it, and said "That is what he wanted and the way he wanted it." After reading the will, Mr. Hatter said that he unlocked Mr. Owens' trunk, and a tin box in the trunk, put the will in the tin box, and after putting it in the box, relocked the box and trunk, all in the presence of Mr. Owens.

Mr. Louis M. R. Smith testified that he was a close friend and neighbor of Mr. W. J. Owens and had numerous conversations with him in reference to his family affairs and relatives. He was especially fond of his cousin, Mrs. Rose McClusky, and expressed the highest appreciation of all she had done for him; that "Cousin Rose," as he affectionately called her, was the only one of his relatives that came around him or cared anything about him. On June or July 1949, Mr. Owens told him that Rose McClusky was so good to him and that he appreciated her greatly for what she was doing for him, and that he certainly wanted "to take care of her as far as some of his property was concerned"; that he knew the deceased wished her to be taken care of in the final settlement of his estate. Mr. Smith further testified that some four to six days before Mr. Owens was taken to the hospital and just prior to his death, in September 1949, Mr. Owens gave him some keys for unlocking and opening of his trunk and he showed him where he kept his business papers; that when he put the key in the lock of the trunk he had no trouble unlocking it; it unlocked readily; it locked very easily, and after he unlocked the trunk he saw a tin box inside the trunk; it was like a fishing tackle box with a catch that closed over a hasp; it was about three to five inches deep.

Mr. Aramita Bird Gee, a hospital nurse who was Mr. Owens' attendant before and at the time of his death and had been nursing Mr. Owens for about six weeks before his death, testified that during the time Mr. Owens was in the hospital he heard Mr. Owens say that Rose McClusky "was the only person who was kind to him in his illness and his old age, and he was going to see that she was well cared for when he was put away." That three or four days before his death Mrs. Rose McClusky and a young man whom witness did not know, came to the hospital to see Mr. Owens and at that time Mr. Owens gave Mrs. McClusky keys to his trunk and told her in the presence of the young man, "If anything happened to him for her to go in there and see those things were well taken care of and that she knew more about his business than anyone else"; that Mr. Owens said something at that time about "a will written recently, he said about two or three weeks—he—had a little will where she was taken care of, for her not to worry about the expenses."

Mr. James A. McClusky, nephew of W. O. McClusky (husband of Rose McClusky), testified to Mr. Owens' fondness for McClusky's wife and that Mr. Owens said many times in his presence "that he thought more of Rose McClusky than any of his kinfolks"; that he never had seen Delmar Owens until this illness. He further testified that on Thursday night, September 1, 1949, three days before Mr. Owens died, he (the witness) and Rose McClusky went to the hospital to see Mr. Owens and when they went into his room, Rose offered to give him the keys to his trunk and as she did so, Mr. Owens said, "No, you keep the keys in case anything happens to me, you go in my trunk, in a little tin box that is locked, one of these keys will fit it, you will find a will in there that will take care of you." Rose McClusky then took the keys that the deceased gave back to her.

Joseph A. McClusky also testified that on Sunday night, September 4, 1949, after they learned that Mr. Owens had died, he and Rose McClusky went to the home of the deceased where several other persons had already gathered and that Mrs. McClusky put the key that the deceased had given her in the lock of the trunk and attemped to turn the key to open the trunk, but that she was unable to turn the key, the lock would not operate, she could not open the lid to the trunk. Being unable to unlock the trunk, she then gave him (the witness) the keys and in like manner he tried to unlock the trunk, but being unable to do so because the tumblers in the lock were jammed, the

tumblers would not let the key turn. He was compelled to get a pair of pliers and a screw driver to prize the trunk open, and after opening the trunk he found that it had been tampered with, the little plate that the tumblers fitted into—the slot—was damaged to where the tumblers would not work when the key was inserted.

Mrs. Rose McClusky, the proponent of the holographic will, after relating her relationship and her close association with the deceased, testified over respondent's objection that during Mr. Owens' last illness and about ten days before his death she had a conversation with Delmar Owens at the hospital and also at the home of Mr. Owens in the presence of Mr. Ramsey and Delmar's sister. In that conversation she testified "I asked Mr. Ramsey for the keys or if he knew where they were. The keys to the trunk. He said that he had the keys and in the presence of Mr. Delmar Owens Mr. Ramsey said 'He was glad to get them to me (her)'." She further testified, after describing the lock in detail, that she inserted the key in the lock to open the trunk but could not open it, and being unable to unlock the trunk herself, she called upon Delmar, nephew of her husband, and several others present to see if they could open the trunk. None of them being able to unlock the trunk with the key, some one of them got a screw driver and some tools and prized the lock open. Before any effort was made to prize the trunk open, the lock evidenced scratches and scars where the key fits into the groove of the trunk, and after the trunk had been opened she observed the tin box in the trunk. This tin box had a little hasp and an eye loop over which the hasp fastened and where the lock attached to lock the box. There was no lock on the box when the trunk was opened. Mrs. McClusky further testified that Delmar, ten days before Mr. Owens' death and while Mr. Owens was in the hospital, was living at the home of Mr. Owens; that he was present when she got the keys and fitted the trunk key in the lock, and that he left the home about a week before the death of Mr. Owens, returning to his home in Ohio. That when she opened the tin box it contained no other will but the will of 1945 and the codicil of 1948. No other will was found.

Delmar Owens, administrator under the probated will and codicil, was called by the petitioners under the adverse party rule. He testified that he was present on the occasion when Mr. Ramsey and his sister were present and saw Mr. Ramsey give Mrs. Rose McClusky some trunk keys; she asked for them and Mr. Ramsey gave them to her. That he saw Mrs. McClusky put the keys in the trunk, saying, "I want to see if they are the right keys."

We are of the opinion the evidence raises the probative issues involved. When a written will cannot be produced, lost or cannot be found, nevertheless it may be established and the provisions thereof be given effect by parol testimony of its execution and contents. A will lost or destroyed previous to the testator's death, if not revoked, may be proved although not in direct terms authorized by statute. Tynan v. Paschal, 27 Tex. 286, 84 Am.Dec. 619. In the determination of the dispute as to whether the will was executed or whether it was lost, destroyed and cannot be found, he who seeks to establish the will and its loss or destruction assumes the burden of proof and the proof must be of sufficient probative value to satisfy the court or trier of facts that it cannot by any reasonable diligence be produced. The testimony of one credible witness who saw the testator execute the will, or read the will, or heard the testator read the will, in absence of contest or dispute to the contrary, may be sufficient to establish its execution and its contents, at least raise the issue. The authorities are practically in accord that where a will, which when lost was in the custody of the testator and after his death cannot be found, a presumption arises that it had been revoked by the testator. McElroy v. Phink, 97 Tex. 147, 76 S.W. 753, 77 S.W. 1025, reversing Tex.Civ.App., 74 S.W. 61. But where there is evidence to repel such presumption, it is not permissible for the trial judge to peremptorily instruct the jury against such evidence. The prima facie presumption of revocation, where there is evidence of the existence of the will and that the will was sur-

reptitiously withdrawn from the possession of the testator, the presumption does not obtain.

We think that in a proceeding such as revealed by this record, supra, consideration must be given the testator's statements tending to support the holographic will offered for probate and that it was not revoked by the testator. According to the statement of the testator at the hospital, and made a few days before his death, showing that he executed the holographic will "to care for Rose McClusky" and that said will would be found, in the event something should happen to him, in a little tin box in his trunk, was at least sufficient to carry the dispute to the jury. There is positive testimony that W. J. Owens executed the alleged holographic will offered to probate; that it was deposited in the small tin box in the deceased's trunk; and after his death the will could not be found. It may not be presumed under the facts and circumstances shown that the testator himself revoked the will. Thus its disappearance, in absence of evidence to the contrary, is sufficient to overcome any presumptive evidence that may be accorded to it having been revoked by the testator. Accordingly we sustain appellants' several points of error.

The judgment of the court below is reversed and cause remanded.

· On Motion for Rehearing

CRAMER, Justice.

The record in this case shows that only one witness testified as to the handwriting on the lost holographic will in question, to wit, one Leonard Hatter. Article 3344, V.A.C.S., applicable here, provides:

"A written will produced in court may be proved: * * * 4. If the will was wholly written by the testator, by two witnesses to his handwrit-

ing, which may be made by affidavit taken in open court and subscribed to by the witnesses, or by deposition. Acts 1876, p. 94; G.L. vol. 8, p. 930; Acts 1945, 49th Leg., p. 468, ch. 296, § 1."

Article 3345, V.A.C.S., provides:

"A written will which cannot be produced in court, may be proved in the same manner as provided in the preceding article, and the same amount and character of testimony shall be required to prove such will as is required to prove a written will produced in court."

The record also shows that Leonard Hatter was the only person other than the testator who saw the will, read the will, or heard the will read.

■ Under such record we were in error in our original opinion in holding that the will was properly proven.

To require the proof necessary to probate a holographic will, would, and does in fact, make it impossible to prove the will under consideration. However, the wisdom of the rule is not for this Court. The Legislature having spoken as to the requirements, such requirements are necessary and the rule is binding on this Court and all other Courts before a will can be probated. The learned trial judge so held, and entered judgment denying probate of that will. In doing so, he followed the mandate of the law. His judgment probating the first will which was properly proven, and denying probate of the holographic will, was proper.

Our former opinion reversing and remanding the trial court's judgment was erroneous. We therefore grant the motion for rehearing, set aside our former order, and here now affirm the judgment of the trial court.

Motion for rehearing granted, and judgment of trial court is affirmed.