**In re ESTATE of James Harvey SIMMS, Deceased.**

**No. 7929.**

Court of Civil Appeals of Texas.

Texarkana.

May 6, 1969.

Rehearing Denied June 3, 1969.

Hughes & Hughes, Texarkana, Dean Carlton, Dallas, Tom Fortescue, Asst. Atty. Gen., Austin, James J. Hartnett, Dallas, E. Harold Beck, C. M. Kennedy, Texarkana, for appellants.

Norman C. Russell, Atchley, Russell, Hutchinson & Waldrop, Texarkana, for appellee.

DAVIS, Justice.

An alleged will and an alleged codicil case. Both were contested. There were two separate jury trials in the District Court. The first jury could not reach a verdict. Proponents filed a motion for a mistrial. Contestant filed a motion for judgment, and, in the alternative, a motion for judgment as to the alleged will and a separate trial on the alleged codicil. Proponents' motion for a mistrial as to the alleged will was overruled, and a mistrial was granted as to the alleged codicil. Contestant's motion was granted for an interlocutory judgment denying to probate the alleged lost will, and separate trial as to the alleged codicil was ordered.

In the second trial, the jury found that there was no alleged codicil. Proponents-appellants have perfected their appeal and have brought forward twenty points of error.

## HISTORY

James Harvey Simms was born October 5, 1868. He died October 31, 1938. He was married to Mary Webb Simms. She was born April 8, 1874, and died April 14, 1947. To this union two children were born who died shortly after birth.

Mary W. Simms had two sisters who lived in their home; viz: Nannie Webb and Dean Webb. Neither of them ever married.

James Harvey Simms had one brother, A. L. (Lem) Simms who was a partner with James Harvey Simms in a country store. They owned many tracts of land together, and they probably did some farming and raising some cattle and hogs in the partnership.

Lem Simms had one daughter, Mary Simms Johnson. Mrs. Johnson died leaving two children, viz: Bill Johnson and Betty Lee Johnson Schultz.

James Harvey Simms had the following sisters; viz: Ada Simms Hart, Fannie Simms Rouse, Carrie Simms Johnson, Miss Nettie Simms, Miss Mary Simms and Miss Mattie Simms. All of the sisters died without issue, except Ada Simms Hart. Mrs. Hart had four children, viz: B. H. Hart, Lola Hart Poer, Sue Hart Petty, and Mattie Hart. B. H. Hart and Mattie Hart died without issue.

Lola Hart Poer, deceased, had six children, viz: Marie Poer Chambers, Willie Vanita Poer May, Ada Lou Poer McNutt, Marvin Poer, Katy Jo Poer McReynolds, and Mattie Bess Poer Jones. Mrs. May died leaving one child, Francis Vanita May, NCM. Her father, Ray May, was appointed her guardian.

Sue Hart Petty, deceased, left two children, viz: James Petty and Betty Sue Petty Law.

While there was a post office at Simms, Texas, James Harvey Simms was the postmaster. The post office was located in the country store that belonged to the Simms brothers. Nannie Webb worked in the post office. Dean Webb taught school at the James Bowie School, helped with the house work and helped look after the cattle. Lem Simms looked after the farming interest, the cattle and the hogs.

Earl C. Overall of Greenville, Texas, testified that he was an accountant and had been preparing the income tax returns for the Simms brothers since 1922. He further testified that he went to Fort Worth, Texas, with James Harvey Simms in June of 1927, for the purpose of James Harvey Simms to make and execute his last Will and Testament. Overall testified that the alleged will was prepared by Lee Tidwell. He also testified that in the year 1938, in May or sometime shortly thereafter, he and his twin brother, Earnest C. Overall, a lawyer from San Antonio, Texas, went fishing on Sulphur River, in Bowie County, Texas, and stopped by the home of James Harvey Simms, who told the Overall brothers that he wanted to write a "codicil" to his alleged will and make some changes. Earl C. Overall testified that he told James Harvey Simms that he did not know anything about how to write a will or a codicil, but his brother, Earnest C. Overall, was a lawyer and he could help him.

Earnest C. Overall testified that he made some notes and dictated the alleged codicil to James Harvey Simms who wrote the codicil in his own handwriting.

Both the Overalls testified that James Harvey Simms in the alleged original will had left all his property to his wife during her lifetime and at her death, his interest was left to his next of kin, or to certain nieces. We will have to assume, from the Overalls testimony, that the beneficiaries under the alleged original will would take the property after the death of Mary W. Simms to share and share alike.

Under the alleged codicil, the alleged original will was changed so at the time of the death of testator, the following alleged bequests were made:

| | | |
|---|---|---|
| 1. | James Bowie Common School District Bowie County, Texas, | $125,000.00, |
| 2. | Lola Poer, | 40,000.00 |
| 3. | Sue Petty, | 30,000.00 |
| 4. | Mattie Hart, | 5,000.00 |
| 5. | ————— Simms, | 25,000.00 |
| 6. | ————— Simms, | 5,000.00 |
| 7. | Earl C. Overall, | The Hall Farm, Bowie County, Texas |

Lem Simms owned a one-half interest in the Hall Farm. James Harvey Simms only owned one-fourth and Mary W. Simms owned one-fourth.

The alleged beneficiaries under the alleged codicil are the proponents to try to probate the alleged lost will and codicil. The original application was not filed until March 31, 1966; twenty-seven years and five months after the death of James Harvey Simms.

## MORE HISTORY

The Overall brothers, one of them a lawyer, testified that James Harvey Simms told them that he was the father of two "woods-colts" (illegitimate children). They did not testify that he told them the name or names of their mother or mothers, or the given name of the illegitimate children. They testified that he said they had "blackmailed" him out of Twenty Thousand ($20,000.00) Dollars.

Nannie Webb died March 4, 1963. Dean Webb is still living. She is 90 years old; her health is extremely poor. She is blind in one eye, can see only a "bulk" out of the other, and is extremely hard of hearing.

## STILL MORE HISTORY

In February, 1964, Earl C. Overall made the Income Tax Returns of Nannie Webb, deceased, and Dean Webb. After the returns were prepared, Dean Webb asked what was the charges for his service. He replied that it was $200.00. She handed him her check book and told him to write the check for that amount. He wrote the check and she signed it. He returned and made her Income Tax Return in 1965.

The check that Dean Webb gave to Earl C. Overall in 1964 was materially altered. According to a handwriting expert, Charles Andrew Appel, Jr., from Washington, D. C., there were eight (8) different ball point pens used on the check. The principal sum had been changed from $200.00 to $2200.00. All the changes and alterations were made by Earl C. Overall. The first "2" in the $2200.00 was written in and was out of line with the rest of the figure. The word "Twenty" was written on the second line of the check. The check was dated "1–16–63". In the lower left-hand corner of the check, Overall wrote: "Expense 1963 Returns, $200.00". He then added below the above notation: "Fee Misses Nannie & Dean Returns Past 10 years $2000.00". He then wrote across the left-hand end of the check: "Cash 1965 or 1966". He cashed the check March 8, 1965. All the above alterations were made after the check was written. On June 22, 1965, Dean Webb filed a civil suit against Earl C. Overall to recover the $2,000.00 that had been altered into the $200.00 check.

After the unsuccessful efforts of the Overall brothers, one a lawyer, to stop the litigation over the $2,000.00, they broke their long silence concerning the alleged will and alleged codicil. Earl C. Overall

went and talked with the Superintendent of the Simms Independent School District, formerly, James Bowie Common School District. No one from the School District testified in the case. He then contacted the heirs of the nieces that were supposedly named in the alleged codicil.

The original application to probate the alleged will and the alleged codicil was filed in the County Court on March 31, 1966. On May 23, 1966, Earl C. Overall executed a "Disclaimer Agreement" which reads as follows:

## "DISCLAIMER AGREEMENT

THE STATE OF TEXAS }
COUNTY OF BOWIE } KNOW ALL MEN BY THESE PRESENTS:

THAT I, EARL C. OVERALL, of Greenville, Hunt County, Texas, have claimed no interest in the Estate of James Harvey Simms, deceased, since the year 1947, and to avoid any dispute or uncertainty in connection therewith, I do hereby renounce and disclaim all interest which I may have or could have had in and to the Estate of James Harvey Simms, deceased, by reason of the provision of a Codicil to his Last Will and Testament, which Codicil was dated approximately in June 1938 and filed for probate on the 31st day of March, 1966, in the County Court of Bowie County, Texas; and I do hereby release and forever discharge the said estate, and devisees and beneficiaries thereof, and every part thereof, from any and all claim or claims or interest which might have accrued or hereafter may accrue to me by reason of the terms of said Codicil to said Will, it being agreed and understood that the undersigned, nor his heirs or assigns, or anyone claiming under him, will at any time hereafter assert any claim or interest of any name, nature or kind in or to said estate or any portion thereof by reason of the provisions of said Codicil to said Will.

"WITNESS MY HAND at Greenville, Texas, this 23 day of May, 1966.

/s/ EARL C. OVERALL
EARL C. OVERALL"

———◆———

(The Disclaimer Agreement was acknowledged before E. K. Massey, Notary, Hunt County, Texas).

## OPINION

Proponents-appellants have grouped their twenty points of error into six groups. By their first group, they say the trial court erred in granting an interlocutory judgment as to the alleged 1927 will; in overruling their motion for a mistrial; and, in denying a jury trial on the issues pertaining to the alleged 1927 will.

(In their briefs, the appellants and the appellee refer to the alleged original will as the "1928" will. The record reflects that if there was any such will, it was executed in June "1927". The alleged will will be discussed in this opinion as the "alleged '1927' will").

The second group of errors are next given and will be discussed with the first group. By their second group, they say the trial court erred in refusing to admit into evidence testimony pertaining to the contestant's-appellee's knowledge of the alleged 1927 will and the alleged 1938 codicil, including their destruction and concealment thereof; in refusing to admit into evidence the testimony of Earl C. Overall pertaining to his personal observation of the execution of the alleged 1927 will; in refusing to admit into evidence the testimony of Earl C. Overall pertaining to the admissions against interest of appellee that she knew of the alleged will and

the alleged codicil; in refusing to admit into evidence the testimony of Earl C. Overall pertaining to the admissions against interest of appellee's alleged co-conspirators, her sisters; in refusing to admit into evidence the testimony of Earl C. Overall pertaining to the admissions against interest of appellee that she knew of the contents of the alleged will and the alleged codicil and that she had destroyed them; and, in refusing to admit into evidence the testimony of Earl C. Overall pertaining to the admissions or declarations of appellee's alleged co-conspirators, her sisters, that they knew the contents of the alleged will and the alleged codicil and that they had been destroyed.

This case has been tried twice in the District Court of Bowie County. At the first trial in February, 1967, the jury was unable to reach a verdict. The trial court granted a motion by appellee for an interlocutory judgment denying to probate the alleged June 1927 will, but the trial court allowed a separate trial as to the alleged 1938 codicil. The second trial as to the alleged 1938 codicil was held in February, 1968. The jury found that James Harvey Simms DID NOT execute an alleged holographic codicil in 1938.

Apparently, the trial court found that the appellants had failed to produce the necessary evidence as to the due execution of the alleged 1927 will for admission to probate. The only proof they offered about the witness, Lee Tidwell, was by Earl C. Overall that he "understood he is dead" and that "understanding" was "only through hearsay". There was no proof as to the signature of James Harvey Simms, Lee Tidwell or the other man who supposedly witnessed the alleged 1927 will. The other witness was never identified.

Section 84, Texas Probate Code, V.A.T. S., applicable to this case, reads as follows:

"§ 84. Proof of Written Will Produced in Court

\*   \*   \*   \*   \*   \*

"(b) Attested Written Will. If not self-proved as provided in this Code, *an attested written will produced in court* may be proved:

"(1) By the sworn testimony or affidavit of one or more of the subscribing witnesses thereto, taken in open court.

"(2) If all the witnesses are non-residents of the county, or those who are residents are unable to attend court, by the sworn testimony of any one or more of them by deposition, either written or oral, taken in the same manner and under the same rules as depositions taken in other civil actions; or, if no opposition in writing to such will is filed on or before the date set for hearing thereon, then by the sworn testimony or affidavit of two witnesses taken in open court, or by deposition in the manner provided herein, to the signature or the handwriting evidenced thereby of one or more of the attesting witnesses, or of the testator, if he signed the will; or, if it be shown under oath to the satisfaction of the court that, diligent search having been made, only one witness can be found who can make the required proof, then by the sworn testimony or affidavit of such one taken in open court, or by the deposition in the manner provided herein, to such signatures or handwriting.

"(3) If none of the witnesses is living, or if all of such witnesses are members of the armed forces of the United States of America or of any auxiliary thereof, or of the armed forces reserve of the United States of America or of any auxiliary thereof, or of the Maritime Service, and are beyond the jurisdiction of the court, by two witnesses to the handwriting of one or both of the subscribing witnesses thereto, or of the testator, if signed by him, and such proof may be either by sworn testimony or affidavit taken in open court, or by deposition, either written or oral, taken in the same manner and under the same rules as depositions taken in other civil actions; or, if it be shown under oath to the satisfaction of the court that, diligent search

having been made, only one witness can be found who can make the required proof, then by the sworn testimony or affidavit of such one taken in open court, or by deposition in the manner provided therein, to such signatures or handwriting.

"(b) Holographic Will. If not self-proved as provided in this Code, *a will wholly in the handwriting of the testator may be proved by two witnesses to his handwriting,* which evidence may be by sworn testimony or affidavit taken in open court, or, if such witnesses are non-residents of the county or are residents who are unable to attend court, by deposition, either written or oral, taken in the same manner and under the same rules as depositions taken in other civil actions." (Emphasis added).

Section 85, Texas Probate Code, relating to "Proof of Written Will Not Produced in Court" reads as follows:

"A written will which cannot be produced in court *shall* be proved in the same manner as provided in the preceding Section for an attested written will or an holographic will, as the case may be, and the same amount and character of testimony *shall* be required to prove such will as is required to prove a written will° produced in court; but, in addition thereto, the cause of its non-production must be proved, and such cause must be sufficient to satisfy the court that it cannot by any reasonable diligence be produced, and the contents of such will must be substantially proved by the testimony of credible witness who has read it or heard it read." (Emphasis added).

■ Appellants contend that Sec. 85, Texas Probate Code is permissive, and is not mandatory. They rely upon 61 T.J.2d 504, and 505 Secs. 342 and 343, and Miller v. Miller, Tex.Civ.App., 1955, 285 S.W.2d 373, N.W.H. There is not a case cited under either section that holds that the "execution" of a will not produced in court "may" be proved by evidence other than that required by Secs. 84 and 85, Tex.Pro.

Code. McClusky v. Owens, Tex.Civ.App., 1953, 255 S.W.2d 939, W.R., specifically holds that proof of a lost holographic will "MUST" be made according to the statutory provisions. In Sec. 85, Tex.Prob. Code, the mandatory word "shall" is used. In the first sentence of 61 T.J.2d 504, Sec. 342, the permissive word "may" is used. We hold that the Sec. 85 Tex.Prob.Code is mandatory. 53 T.J.2d 267, Sec. 179, and the cases cited therein.

Hon. R. Dean Moorhead, one of the draftsmen of the Texas Probate Code, in the "FOREWORD" to the Probate Code, said in part, as follows:

"The Texas Probate Code was not designed to make any radical changes in the former probate law. Despite the fact that most of the Texas probate statutes were enacted in 1848 and have remained unchanged since their reenactment in 1876, the bulk of the statutes are still workable and suited to modern conditions. However, some of them were ambiguous, were couched in archaic language, and left wide gaps in which the bar could only guess as to the applicable law. In addition, largely as the result of piecemeal amendments and additions adopted since 1876, the statutes contained many conflicts. The primary goal of those who worked on the Code was to eliminate the conflicts, to clarify the ambiguities, to fill the gaps, to modernize some of the language, and otherwise to deal with particular statutes which had proved productive of problems. At the same time, however, the draftsmen sedulously sought to avoid changing any statute unless a change was deemed necessary for one of the aforementioned reasons. The language and grammar of a statute were altered only when they had proved troublesome. Precise grammarians, therefore, will find in the Code many split infinitives, dangling participles, and other grammatical misdemeanors.

\* \* \* \* \* \*

"The Code does, however, change and add to the former law in many respects; and unwise indeed will be the attorney

who proceeds under the Code with the blithe assumption that all the law thereunder is the same as it has been in past years."

Earl C. Overall, an accountant, and Earnest C. Overall, a lawyer, owed the beneficiaries and the State of Texas the moral obligation and duty to promptly report the alleged 1927 will and the alleged 1938 codicil shortly after the death of James Harvey Simms on October 31, 1938. Earnest C. Overall, a lawyer, supposedly dictated the alleged 1938 codicil. According to his testimony, he knew about the death of the testator in 1940. Being a lawyer, he knew that limitation would have a serious effect on their probation after the expiration of four years. And, we would assume that Earl C. Overall knew about the limitation period, also, as he was one of the beneficiaries under the alleged codicil. Although, they chose to keep extremely quiet until after Earl C. Overall had altered the check and was sued for $2,000.00.

Section 75, Tex.Prob.Code, reads as follows:

"Upon receiving notice of the death of a testator, the person having custody of the testator's will shall deliver it to the clerk of the court which has jurisdiction of the estate. On *sworn written complaint* that *'any person'* has the last will of any testator, or any papers belonging to the estate of a testator or intestate, the county judge shall cause said person to be cited by personal service to appear before him and show cause why he should not deliver such will to the court for probate, or why he should not deliver such papers to the executor or administrator. Upon the return of such citation served, unless delivery is made or good cause shown, if satisfied that such person had such will or papers at the time of filing the complaint, such judge may cause him to be arrested and imprisoned until he shall so deliver them. Any person refusing to deliver such will or papers shall also be liable to any person aggrieved for all damages sustained as a result of such refusal, which damages may be recovered in any court of competent jurisdiction." (Emphasis added)

This section does not put any civil or criminal liability on the Overall brothers, but such a section could be of some benefit to certain future beneficiaries and to the State of Texas. In the case of Van Orden v. Pitts, Tex.Com.App., 206 S.W. 830, opinion adopted by Sup.Ct., Judge Montgomery had this to say:

"The facts are that John M. Gardner was the sole heir at law of Mrs. Morphis, and in the absence of a will would have taken the entire estate. The will of Mrs. Morphis was discovered by him about one year after her death, and after such discovery he concealed the existence of such will and failed to offer the same for probate, and took possession of all the moneys and property of the testator, and claimed and used the same as his own, ignoring the rights of the other devisees in the will. Mrs. Van Orden had no knowledge of the existence of the will until a short time before this suit was instituted.

"We think that John M. Gardner, when he discovered the will, was at least under a moral obligation to either offer it for probate or disclose the fact of its existence to the other beneficiaries named in said will and give them an opportunity to offer the same for probate. This conclusion is so clearly in consonance with justice that no authorities ought to be necessary, but the point has been decided. Filhiol's Succession, 123 La. 497, 49 So. 138; Dodd v. Anderson, 197 N.Y. 466, 90 N.E. 1137, 27 L.R.A. (N.S.) 336, 18 Ann.Cas. 738.

"In several jurisdictions an executor named in a will who failed to produce the will for probate is liable to a penalty or indictment. 40 Cyc. 1226."

If such will and codicil had in truth and fact existed, the Overall brothers owed the officials of the school district, and the

other beneficiaries, the moral obligation and duty to promptly report to them of their existence immediately after the death of the testator. They knew the limitation period was four years. Instead, they kept extremely quiet for more than twenty-seven years, and after Earl C. Overall had been sued for $2,000.00; the amount of which he had altered a check.

■ In order to probate an alleged lost will and holographic codicil (twenty-seven (27) years and five (5) months after the death of the testator) requires proof that all of the witnesses required by law to attest the alleged lost will be produced to testify as to whether they attested it and whether it was duly executed, if the production of such witnesses is possible; provided they are alive and within the jurisdiction of the Court. Aschenbeck v. Aschenbeck, Tex.Civ.App., 1933, 62 S.W.2d 326. In this case, only one alleged witness was proved; Lee Tidwell. It was not positively proved that Lee Tidwell was dead, nor whether or not he was in the jurisdiction of the Court. The other witness was not named. There is no evidence as to whether or not he is living or dead, nor whether or not he is in the jurisdiction of the Court. This must be done by the *witnesses to* the will, or their failure to make such proof be duly accounted for, *before* secondary evidence of such facts can be offered. Aschenbeck v. Aschenbeck, supra; Sec. 88(b) (2) Tex.Probate Code; 41 A.L.R.2d 393; 3 A.L.R.2d 949.

■ The alleged lost will and codicil was seen, according to the testimony of the witnesses, the Overall brothers, in the possession of James Harvey Simms. Under the facts in this case (if James Harvey Simms did execute a will and codicil) it is presumed, as a matter of law, that the alleged will and codicil were revoked. The burden was on appellants to prove the contrary by clear and satisfactory proof. Harris v. Robbins, Tex.Civ.App., 1957, 302 S.W.2d 225, N.W.H.; McClusky v. Owens, Tex. Civ.App., 1953, 255 S.W.2d 939, W.R.;

Dodd v. Peoples National Bank, Tex.Civ. App., 1964, 377 S.W.2d 760, N.W.H.

■ The witnesses, Overall brothers, for appellants testified that Dean Webb told them on several occasions that she, Dean Webb, had destroyed the alleged will and codicil. The testimony that Mary W. Simms told them that the "girls" (Nannie and Dean) had taken the alleged will and codicil from a drawer is no proof that either of them had destroyed them either before or after the death of the testator. This testimony is hearsay in nature. Hartford Accident & Indemnity Co., v. McCardell, Tex., 1963, 369 S.W.2d 331; Atkins v. Graves, Tex.Civ.App., 1963, 367 S.W.2d 372, N.R.E.; Martin v. Johnson, Tex.Civ. App.1963, 365 S.W.2d 429, N.W.H.; Gulf, C. & S. F. Ry. v. Johnson, Tex.Civ.App., 1902, 67 S.W. 182; Wigmore, Evidence, Secs. 1361 & 1788.

■ There are two exceptions to the "hearsay rule". They are: 1. Declarations against interest; and, 2. Admissions of a party. Neither of these exceptions apply to this case. A declaration against interest is defined as a statement opposed to a pecuniary or property interest of a witness. Agricultural & Mechanical College v. Guinn, Tex.Civ.App., 1959, 326 S.W.2d 609, N.R.E.; 2 McCormick & Ray, Texas Law of Evidence 1, Sec. 1001. A declaration against interest is not admissible unless the declarant is unable to testify by reason of death, illness, or sanity. Griffith v. Sauls, 1890, 77 Tex. 630, 14 S.W. 230; Tarwater v. Donley County State Bank, Tex. Civ.App., 1925, 277 S.W. 176, N.W.H.; Wigmore-Evidence, Sec. 1456; 2 McCormick & Ray, Texas Law of Evidence, 2, Sec. 1003.

■ Nannie Webb and Dean Webb did not own any interest in the Estates of James Harvey Simms and Mary W. Simms until after the death of Mary W. Simms (April 14, 1947). These two exceptions, under Texas law, are to be governed by the ownership of the witness at the time the

admissions or declarations are made. Champion Paper & Fiber Co. v. Wooding, Tex. Civ.App., 1959, 321 S.W.2d 127, N.R.E.; Singleton v. Carmichael, Tex.Civ.App., 1957, 305 S.W.2d 379; 36 Tex.L.Rev. 517.

The evidence is fully sufficient to support the jury's answer that there was "NO" codicil executed in 1938.

Anyway, the evidence was wholly insufficient in the first trial to admit the alleged 1927 will to probate. There was no error in the trial court granting the interlocutory judgment denying the alleged 1927 will to probate. There is no error shown as to why the alleged 1938 codicil should not be admitted to probate. The points of error are overruled.

We have carefully considered appellants' points of error 9 through 20, find them to be without any merit, and they are overruled.

The judgment of the trial court is affirmed.