Oliver LEWIS, Administrator of the Estate of A.V. White, Appellant,

v.

Thomas WHITE, Appellee.

No. 09–87–108 CV.

Court of Appeals of Texas, Beaumont.

Feb. 25, 1988.

Rehearing Denied March 16, 1988.

As Amended March 21, 1988.

---

1. We will not dignify the allegations of prejudice by appellants' counsel by quoting them in the text of the opinion.

Matthew W. Plummer, Jefferson, Mims, Plummer & Rice, Houston, for appellant.

Ronald J. Schaeffer, Lufkin, for appellee.

## OPINION

BURGESS, Justice.

This is a lost will case. A.V. White, Jr., died in December 1980 and application was made to admit a will executed in 1959 to probate. The probate court admitted the will to probate and named appellant the executor of the estate.[1] The 1959 will left all of A.V. White, Jr.'s estate to his wife, Carrie White. After A.V. White, Jr.'s death, but before his will was admitted to probate, Carrie White died intestate. In April 1985 Thomas White, A.V. White, Jr.'s brother, filed an application to set aside the order admitting the 1959 will to probate and seeking to admit to probate a lost will alleged to have been written by A.V. White, Jr., after the 1959 will. This lost will provided that A.V. White, Jr.'s property acquired before marriage should go to his brother Tom and the property acquired during marriage should go to his wife Carrie White. The lost holographic will further named Tom White as the executor.

The contest was tried to a jury and the jury found that: (1) A.V. White, Jr., after the date of his typewritten will dated in 1959, executed a valid handwritten will which he never revoked, (2) the applicant made a diligent effort to locate the holographic will, and (3) Thomas White was not in default in failing to present such holographic will for probate prior to December 19, 1984. Based upon the jury's answers, the trial court entered a judgment admitting the lost holographic will to probate and providing that all real property acquired by A.V. White, Jr. before his marriage be devised to Thomas White, all property acquired after marriage be devised to Carrie White and all community personal property be bequeathed to Carrie White. The court further ordered that appellant continue as administrator.

Appellant appeals, bringing forth six points of error. We find point of error number four dispositive of this appeal. This point of error alleges the trial court erred in failing to grant a new trial where the evidence was against the findings of the jury. While this is an extremely general point of error, appellant does, in his argument, specifically point out his complaints. We deal only with his complaint that the jury's finding that Tom White made a diligent effort to locate the lost will is against the great weight and preponderance of the evidence.

TEX.REV.CIV.STAT.ANN. sec. 85 (Vernon 1980) (Texas Probate Code), sets out the provisions for probating a lost will. A proponent must show (1) that the will was properly executed (2) proof of the cause of non-production and that the proponent is unable to produce the will by reasonable diligence, and (3) substantial proof of the contents of the will by a credible witness. Coulson v. Sheppard, 700 S.W.2d 336, 337 (Tex.App.—Corpus Christi 1985, no writ). See also, Howard Hughes Medical Institute v. Neff, 640 S.W.2d 942, 951–52 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); In re Estate of Simms, 442 S.W.2d 426, 432 (Tex.Civ.App.—Texarkana 1969, writ ref'd n.r.e.). The proponent presented sufficient proof on elements 1 and 3. Element 2 is where the proof is deficient. As per the dictates of Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.1986), we detail the evidence on this point.

Appellee's witness, Dan Blanks, was produced to prove elements 1 and 3. As to the location of the will, this witness testified that after he read the will, he put it back into a trunk while in the presence of the deceased and his wife. The next witness, Reginald White, testified to a similar scenario; he read the will and gave it back to the deceased. These witnesses shed no light on the present location of the will.

---

1. Appellant might more properly have been named administrator with the will annexed, since he was appointed in lieu of the named executrix, who was unable to serve. TEX. PROB.CODE ANN. sec. 178(b) (Vernon 1980); 29 TEX.JUR.3d Decedents' Estates sec. 796 (1983).

The next witness was the notary public who notarized the holographic will. She testified she last saw the will in the possession of the deceased the day it was notarized. The next witness appeared by deposition and was Mrs. Q.Z. Agnew, a niece of Carrie White and one of Carrie White's heirs at law. Mrs. Agnew testified that she had no personal knowledge of A.V. White, Jr.'s handwritten will, but had heard talk of a handwritten will from Freddie Hughes and that Bernice Holiday had found a will. Freddie Hughes then testified and denied telling Q.Z. Agnew about a handwritten will of A.V. White, Jr., but said she had been discussing the will with A.V. White, Sr.

The next witness was Mrs. Wilma White, the daughter-in-law of Tom White. Wilma White testified she cared for A.V. White, Jr. and his wife in the latter months of their life. She testified she never read the will, but saw it in an envelope in the trunk shortly before A.V. White, Jr.'s death while he was hospitalized. She also testified that Q.Z. Agnew and Carrie White stayed at the White residence while A.V. White, Jr. was hospitalized. When A.V. White, Jr. returned home after his hospitalization, he asked Wilma White to look for the will in the trunk; she did, but could not find it. Wilma White could not shed any further light on the location of the lost will. The next witness was Doc White, a brother of A.V. White, Jr. and Tom White. Doc White testified that A.V. White, Jr. asked him to help him look for some papers. He testified A.V. White, Jr. did not specify a will or relate to him any testimentary desires. Doc White also verified the presence of Q.Z. Agnew and Carrie White in the home during A.V. White, Jr.'s hospitalization. The proponent then rested. Appellant then presented evidence through the deposition of Tom White. The deposition testimony reflected that Tom White had been told of the existence of the handwritten will and it contents. A.V. White, Jr. had asked Tom White to take the will on several occasions. Tom White's testimony is sometimes confusing, if not conflicting. Tom White admits to having taken the envelope into his possession at some point, but did not look into it. Later he states he did look inside the envelope and it had some papers in it. Tom White then went on to admit he had had the envelope in his possession and that he had delivered it to an attorney in Huntsville, Texas.

Appellee attempted to show, by repeated questions concerning opportunity, that Q.Z. Agnew was somehow involved in the disappearance of the handwritten will of A.V. White. While this is certainly a possibility, such a finding, if that had been an actual finding, would have been against the great weight. One of appellee's own witnesses testified that Bernice Holiday had the will while the proponent admitted he took the envelope to a lawyer in Huntsville. Appellee produced no evidence as to the unavailability of Bernice Holiday or what steps had been taken to question her concerning the lost will. Furthermore, appellee produced no testimony to refute the proponent's own testimony that the envelope had been taken to a lawyer in Huntsville. If that were untrue or if Tom White had been mistaken about that, evidence should have been presented to the jury on that point. We have none in the record before us. We believe the requirement of showing diligence has not been met to the extent sufficient to sustain the jury's finding.

We have reviewed appellant's other points of error. There was evidence to support the submission of the special issues, therefore points of error number one, two and three are overruled. Point of error number five was neither briefed nor argued; it is therefore overruled.

There was sufficient evidence presented concerning the contents of the lost will to enable the trial court to make a distribution of the estate. Point of error number six is, likewise, overruled.

Having sustained point of error number four, we remand the cause for a new trial.

REVERSED AND REMANDED.